United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 18, 2005**

Charles R. Fulbruge III
Clerk

REVISED OCTOBER 26, 2005

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04 31100
_____

BARBARA CUTRERA,

Plaintiff-Appellant,

v.

BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY;
LOUISIANA STATE UNIVERSITY FOUNDATION;
MARIAN CAILLIER,

Defendants - Appellees.

_____

Appeal from the United States District Court
For the Middle District of Louisiana

_____

Before DAVIS, JONES, and GARZA, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Appellant Barbara Cutrera, who suffers from a form of macular degeneration, alleges that her former employer, the Louisiana State University Foundation ("LSU Foundation"), the Board of Supervisors of Louisiana State University ("LSU Board"), and LSU ADA Coordinator Marian Callier failed to accommodate her disability and terminated her in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq, and 42 U.S.C. § 1983. Cutrera appeals the district court's grant of summary judgment for Appellees, and specifically the court's holding that (1) Appellant

-1-

is not disabled for purposes of the ADA, (2) Appellant failed to make out a retaliation claim under the ADA, and (3) Appellant failed to make out a claim under § 1983.  Because we conclude that Appellant raises a genuine question of material fact regarding her disability status under the ADA, we reverse in part, affirm in part, and remand.

I.

Appellant Barbara Cutrera was originally hired by LSU as a coordinator/research associate in the LSU Law Library in 1989.  In 1993, Cutrera began experiencing difficulty tracking moving objects and driving at night, as well as numbness in her eyelids when reading from a computer screen.  After consultation with several doctors, Cutrera was diagnosed with Stargardt's disease, a form of macular degeneration.[1]  Cutrera's vision has steadily deteriorated, and she now has virtually no central vision in her left eye, and little in her right.  Cutrera retains some limited peripheral vision primarily in her right eye.  There is no known cure or treatment for Stargardt's disease, and the vision impairment cannot be corrected with eyeglasses, contact lenses, or surgery.

---

[1]  Stargardt's disease (also known as fundus flavimaculatus and Stargardt's macular dystrophy) is the most common form of inherited juvenile macular degeneration.  It causes a progressive loss of central vision and, in the early stages patients may have good visual acuity, but may experience difficulty with reading and seeing in dim lighting.  The progression of vision loss is variable and can start with a visual acuity of 20/40 and decrease rapidly to 20/200 (legal blindness).  There is no effective treatment for Stargardt's disease.

Although Cutrera's vision impairment was minor at the time of her diagnosis, by 1997 her vision had deteriorated enough that she was having difficulty reading information that was handwritten or typed in small fonts, and Cutrera notified her supervisors at the LSU Law Library of her condition. Cutrera formally requested accommodation for her impairment, and the LSU Law Library granted her additional time to complete her job tasks.

In 1998, Cutrera applied for and was offered a position as a research assistant with the LSU Foundation. The LSU Foundation exists to encourage financial support for LSU, and the Foundation also manages most of the investments and serves as trustee for most of the private assets contributed for the benefit of the University. Cutrera was hired to research prospective donors to LSU and maintain the donor files kept by the Foundation. Cutrera described her visual impairment during her interview at the Foundation.

Cutrera began work at the LSU Foundation on July 28, 1998, and soon discovered she was having difficulty reading many of the materials included in the donor files, such as handwritten notes and newspaper clippings, as well as type displayed on her computer screen. After notifying her supervisors, Cutrera scheduled meetings with a vocational rehabilitation counselor and the LSU ADA Coordinator, Marian Callier. During the meeting with Callier on August 3, 1998, Callier terminated Cutrera and informed her that she need not return to work.

On August 2, 1999, Cutrera filed suit in Louisiana state court, alleging disability discrimination and retaliation in violation of the ADA, deprivation of her liberty interest in violation of § 1983, and intentional infliction of emotional distress in violation of state tort law. After removal, the District Court granted summary judgment for Appellees on the grounds that (1) Cutrera is not disabled for purposes of the ADA, (2) Cutrera failed to make out a retaliation claim under the ADA, (3) Cutrera failed to make out a claim under § 1983, and (4) Cutrera failed to make out a state law tort claim. This appeal followed.

## II.

We review the district court's court's summary judgment rulings *de novo*, applying the same standard as the district court. Wyatt v. Hunt Plywood Co., Inc., 297 F.3d 405, 408 (5th Cir. 2002). The Court may grant summary judgment where there is "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A "dispute about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Mason v. United Air Lines, 274 F.3d 314, 316 (5th Cir. 2001). Therefore, summary judgment is appropriate if the nonmovant fails to establish facts supporting an essential element of her *prima facie* claim.

-4-

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Mason, 274 F.3d at 316.  In making the determination of whether summary judgment was proper, the Court reviews the facts, and all inferences drawn from those facts, in the light most favorable to the party opposing the motion.  Jurgens v. EEOC, 903 F.2d 386, 388 (5th Cir. 1990).  We will not, however, "weigh the evidence or evaluate the credibility of witnesses...."  Anderson, 477 U.S. at 248; Mason, 274 F.3d at 316.

III.

A.

1.

Cutrera argues first that the district court erred in concluding that she is not disabled for purposes of the ADA, as required to make out a *prima facie* case of discrimination under the ADA.[2]  The term "disability" under the ADA means: "(A) a physical impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  The EEOC's regulations state that the term "major life activities" includes "functions such as caring for oneself,

---

[2]  The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to ... the hiring ... or discharge of employees."  42 U.S.C. § 12112(a).  To establish a *prima facie* case for discrimination under the ADA, a plaintiff must be a qualified individual with a disability.  Mason, 274 F.3d at 316 (5th Cir. 2001).

-5-

performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

The District Court granted summary judgment to Appellees on the grounds that Appellant failed to demonstrate that her vision impairment imposed a substantial limitation on her ability to see or work. Cutrera contends on appeal that the record reflects a genuine question of material fact regarding whether her impaired vision substantially limits the major life activities of seeing and working.

Our inquiry into whether Cutrera's impairment substantially limits her ability to see is guided by Albertson's Inc. v. Kirkingburg, 527 U.S. 555 (1999) and Sutton v. United Airlines, Inc., 527 U.S. 471 (1999). In Kirkingburg, the Supreme Court held that the ADA "requires monocular individuals, like others claiming the Act's protection, to prove a disability by offering evidence that the extent of the limitation in terms of their own experience, as in loss of depth perception and visual field, is substantial." Kirkingburg, 527 U.S. at 568. However, the Court also noted that monocular individuals do not have an "onerous burden" and that "people with monocular vision 'ordinarily' will meet the Act's definition of disability." Id. In Sutton, the Supreme Court held that mitigating measures must be taken into account in judging whether an individual has a disability. Sutton, 527 U.S. at 482 (holding that claimants with 20/200 vision or worse in both eyes who failed to meet the airline's minimum vision requirement of

-6-

uncorrected visual acuity of 20/100 were not disabled within the meaning of the ADA because their vision was 20/20 or better corrected).

Thus, Cutrera must demonstrate that her vision impairment, taking into account any mitigating measures, substantially limits her ability to see in terms of her own experience. The record reflects that a fact issue is presented on this question. The testimony of both Cutrera and Dr. David Newsome, a specialist in retinal degeneration, demonstrates that Cutrera's visual impairment is not simply a lessening of visual acuity; it is a deterioration of vision from the inside of her visual field out. The most severe deterioration is in the center of her vision; she now has virtually no central vision in her left eye, and little in her right. Cutrera retains some limited peripheral vision primarily in her right eye, but is legally blind in her left eye. Although Cutrera's condition is currently stable, Dr. Newsome testified that it is very likely that Cutrera will continue to lose what little vision she now retains. Cutrera testified that she now does not believe it would be safe for her to drive, and has significant difficulty reading small type, handwriting, or any writing with poor contrast.

There is no known cure or treatment for Stargardt's disease, and the vision impairment cannot be corrected with mitigating measures such as eyeglasses, contact lenses, or surgery. Rather than adjusting to compensate for the vision impairment, as would

-7-

occur in the normal case of reduced vision, Dr. Newsome testified that Cutrera's impairment forces her eyes to work against each other, impairing her ability to read and visually track moving objects. Rather than relying on her less-impaired eye, her more-impaired eye actively interferes with her vision.

Dr. Newsome's testimony regarding the extent of Cutrera's impairment, and Cutrera's own testimony about the effect her limited vision has on her ability to see give rise to a genuine question of material fact on whether Cutrera is disabled under the ADA. Because we find that Appellant raises a genuine question of material fact with respect to a substantial limitation on her ability to see, we need not address whether her impaired vision also imposes a substantial limitation on her ability to work.

2.

Appellees offer as an alternate basis for affirming the summary judgment the argument that Cutrera failed to request an accommodation from the LSU Foundation. "In general ... it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed." 29 C.F.R. § 1630.9, App. (1995). Once such a request has been made, "[t]he appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the qualified individual with a disability." Id. Thus, the employee's initial request for an accommodation triggers the employer's obligation to participate in the interactive process. Taylor v.

-8-

<u>Principal Financial Group, Inc.</u>, 93 F.3d 155, 165 (5th Cir.), <u>cert. denied</u>, 519 U.S. 1029 (1996).  However, when an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA.  See <u>Loulseged v. Akzo Nobel Inc.</u>, 178 F.3d 731, 736 (5th Cir. 1999) (citing <u>Taylor v. Phoenixville School Dist.</u>, 174 F.3d 142, 165 (3d Cir. 1999); <u>Bultemeyer v. Fort Wayne Community Schools</u>, 100 F.3d 1281, 1285 (7th Cir. 1996)).

Cutrera argues that although she began the interactive process by notifying her supervisors and meeting with the LSU ADA coordinator, Appellees refused to discuss any steps that could be taken to accommodate her disability, and instead terminated her immediately.  Appellees contend that Cutrera simply informed them that she could not identify any reasonable accommodation which would enable her to perform the tasks required of her.

Cutrera began work at the LSU Foundation on Tuesday, July 28, 1998.  She testified that she was having difficulty reading many of the materials included in the donor files, such as handwritten notes and newspaper clippings, as well as type displayed on her computer screen, almost immediately after beginning work.  Cutrera testified that after discussing the problems she was having with her immediate supervisor, she scheduled an appointment with her vocational rehabilitation counselor for Friday, July 31, 1998, to discuss potential accommodations.  Cutrera also scheduled a meeting with Appellee Marian Callier, the LSU ADA Coordinator, for the

following Monday, August 3, 1998. Cutrera testified that during her meeting with Callier, she informed Callier that she had met with her rehabilitation counselor, and that the rehabilitation counselor could meet with Callier and the LSU Foundation in order to discuss potential accommodations. Cutrera testified that Callier instead terminated her at that meeting. Cutrera further testified that she told Callier that she wanted to return to work in order to find a solution, but that Callier told her there was no need to do so.

Marian Callier testified, however, that Cutrera informed her in the Monday meeting that she was unable to perform her job duties and could not immediately identify an appropriate accommodation. Callier concedes that she was aware of Cutrera's meeting with a rehabilitation counselor and her intention to return to work, but nonetheless argues that Cutrera could not immediately identify a workable accommodation at the Monday meeting, and therefore was appropriately terminated.

An employer may not stymie the interactive process of identifying a reasonable accommodation for an employee's disability by preemptively terminating the employee before an accommodation can be considered or recommended. In this case, Callier's awareness of Cutrera's meeting with a rehabilitation counselor and her intention to return to work triggered the LSU Foundation's obligation to participate in an interactive process with Cutrera to identify a reasonable accommodation for Cutrera's disability.

-10-

Reviewing these facts, and all inferences drawn from those facts, in the light most favorable to Appellant Cutrera, we conclude that summary judgment for Appellees based on the argument that Cutrera failed to request an accommodation would be inappropriate.

B.

Appellant argues next that the District Court erred when it granted summary judgment on her ADA retaliation claim. The District Court found that appellant failed to prove any causal connection between the protected activity asserted in Appellants retaliation claim—requesting an accommodation from the LSU Law Library in 1997 and applying for new positions following her termination in 1998—and the adverse employment action. Appellant now argues that the District Court failed to consider her request for accommodations at the LSU Foundation in 1998 as a basis for the alleged retaliation. However, Appellant's new factual theory was not raised in her complaint, nor raised in her opposition to Appellee's motion for summary judgment. We decline to consider Appellant's new arguments raised for the first time on appeal. Greenberg v. Crossroads Sys., Inc., 364 F.3d 657, 669 (5th Cir.2004). The District Court correctly dismissed the retaliation claims.

C.

Appellant argues next that the District Court erred when it granted summary judgment on her § 1983 claim, arguing that the District Court ignored her First Amendment retaliation claim.

-11-

Appellant's First Amendment retaliation claim, however, was not raised in her complaint, and instead was raised for the first time in response to Appellee's motion for summary judgment. A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court. Fisher v. Metropolitan Life Ins. Co., 895 F.2d 1073, 1078 (5th Cir. 1990).

The district court properly considered only Appellant's § 1983 claims based on the equal protection and due process grounds raised in the complaint and correctly granted summary judgment on the claims as pled. Appellant has not briefed the equal protection or due process issues on appeal, and has therefore waived those claims. See Gomez v. Chandler, 163 F.3d 921, 921 (5th Cir. 1999) (holding that where a claim is not briefed on appeal, it is abandoned). Because Appellant failed to properly raise the First Amendment claim, and has abandoned her equal protection and due process arguments, we conclude that the district court correctly granted summary judgment to Appellees on the § 1983 claims.

IV.

For reasons stated above, we conclude that Appellant has raised a genuine question of material fact regarding her disability status under the ADA and remand her ADA claim to the District Court for further proceedings. We affirm the District Court's judgment in all other respects.

-12-

Affirmed in part, reversed in part, and remanded.