United States Court of Appeals
Fifth Circuit

**F I L E D**

April 10, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-10317
_____

ALPHA KAPPA ALPHA SORORITY INC; ALPHA PHI ALPHA FRATERNITY
INC; KAPPA ALPHA PSI FRATERNITY INC; OMEGA PSI PHI
FRATERNITY INC; DELTA SIGMA THETA SORORITY INC; PHI BETA
SIGMA FRATERNITY INC

Plaintiffs - Appellants

v.

CONVERSE INC

Defendant - Appellee

_____

Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
No. 3:03-CV-2954-B
_____

Before KING, BARKSDALE, and PRADO, Circuit Judges.

KING, Circuit Judge:[*]

In this trademark and trade dress infringement action under
the Trademark Act of 1946 (the "Lanham Act"), as amended and
codified in 15 U.S.C. §§ 1051 et seq., the plaintiffs appeal an
order of the district court granting the defendant's motion to
dismiss under Federal Rule of Civil Procedure 12(b)(6) for

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

-1-

failure to state a claim upon which relief could be granted.  The district court dismissed the action because the complaint presented only conclusory allegations of trademark infringement with respect to a violation of section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and failed to identify the specific elements comprising their alleged common-law trademarks and trade dress that deserved protection under section 43(a) and (c) of the Lanham Act, 15 U.S.C. § 1125(a) and (c).  Having disposed of the federal claims, the district court declined to exercise supplemental jurisdiction over the remaining state law claims under TEX. BUS. & COM. CODE ANN. § 16.29 (Vernon 2005) for lack of subject-matter jurisdiction.  Alpha Kappa Alpha Sorority v. Converse, Inc., 2005 WL 65598, at **2-5 (N.D. Tex. Jan. 12, 2005).  For the following reasons, we AFFIRM in part, REVERSE in part, VACATE in part, and REMAND.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a complaint filed on December 11, 2003, in the United States District Court for the Northern District of Texas, Dallas Division, on behalf of six predominantly African-American fraternities and sororities[1]

---

[1]  The complaint identifies the six fraternities and sororities bringing the lawsuit against Converse as (1) Alpha Kappa Alpha Sorority, Inc., (2) Alpha Phi Alpha Fraternity, Inc., (3) Kappa Alpha Psi Fraternity, Inc., (4) Omega Psi Phi Fraternity, Inc., (5) Delta Sigma Theta Sorority, Inc., and (6) Phi Beta Sigma Fraternity, Inc.  Given the overlapping nature of their claims, this opinion will hereinafter refer to the organizations collectively as "the plaintiffs."

against defendant-appellee Converse, Inc. ("Converse"), a manufacturer of sneakers and basketball shoes, alleging federal and state claims of trademark and trade dress infringement, as well as unfair competition. The complaint alleges that the plaintiffs own a series of registered trademarks and unregistered distinctive trademarks and trade dress, "some of which contain the founding year(s), colors and identification" of the plaintiffs. Compl. ¶ 20. The complaint also identifies the distinctive two-color combination and founding year of each plaintiff organization.[2] Id. ¶ 24. The plaintiffs assert that they "have generated substantial revenues from manufacturing, selling, and licensing for manufacture and sale of, Greek paraphernalia, including apparel, shoe wear, and other products" that bear the distinctive marks and trade dress of the organizations. Id. ¶ 28.

According to the complaint, Converse produced and marketed a line of athletic shoes called the GREEKPAK Weapon basketball shoe (the "GREEKPAK line" or "GREEKPAK shoes").[3] Each model of the GREEKPAK line features a two-color combination associated with

---

[2] Although two plaintiffs share the same two-color combination--Kappa Alpha Psi Fraternity and Delta Sigma Theta Sorority both using red and white as identifying colors--no two plaintiffs share the precise combination of colors and founding year.

[3] Converse notes in its brief that sales of the GREEKPAK line ceased prior to the filing of the lawsuit. See Appellee's Br. at 1.

one of the plaintiff organizations and a small embroidered date that corresponds to the founding year of that same organization near the heel of the shoe. See id. ¶ 35 ("The years etched on the [sic] Converse's GREEKPAK shoes and the colors of the shoes match precisely the colors and founding years of Plaintiffs' Greek-based Sororities and Fraternities."). In addition to the conspicuous similarity between the shoes and the two-color/founding year combinations of the plaintiffs, the complaint avers that the marketing slogans[4] used in advertising the GREEKPAK line were "clearly designed to exploit and capitalize financially" on the sense of pride felt by members of the plaintiff organizations. Id. ¶ 38. Therefore, the plaintiffs allege that the use of these marks is likely to cause confusion among customers and potential customers as to the source and sponsorship of the shoes.

Converse filed a motion to dismiss under Rule 12(b)(6) on January 30, 2004. The plaintiffs did not immediately file a responsive pleading, but they did serve Converse with interrogatories and requests for document production around the same time. On February 12, 2004, Converse filed a motion to stay the plaintiffs' discovery requests, arguing that discovery could

---

[4] According to the complaint, Converse used advertising slogans to promote the GREEKPAK line such as "no matter your Greek affiliation, grab these quick for representation" and "These GREEKPAK Weapon basketball shoes are proven to make you proud. See you on the yard." Compl. ¶¶ 36-37.

not be undertaken until a scheduling order had been issued by the court. Moreover, Converse argued that allowing discovery before a ruling on its Rule 12(b)(6) motion would be premature. The plaintiffs filed a response to Converse's Rule 12(b)(6) motion on February 17, 2004, and requested, in the alternative, leave to amend the original complaint in the event the district court decided to grant the motion to dismiss.[5]

On July 8, 2004, the district court issued an order denying Converse's motion to stay discovery as moot because the court had not yet issued a scheduling order to initiate discovery. Shortly thereafter, the case was transferred to a different judge. The district court issued an Order Regarding Transition on August 17, 2004, that stayed the issuance of a scheduling order until the court ruled on the pending motion to dismiss.

The district court granted Converse's motion to dismiss on January 12, 2005. The district court found that the plaintiffs failed to allege infringement of any specific registered trademarks under section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a). Alpha Kappa Alpha Sorority, 2005 WL 65598, at *3. With respect to the plaintiffs' common-law trademark rights for their unregistered two-color/founding year combinations under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the district court found that the plaintiffs had failed (1) to

---

[5] The plaintiffs did not attach a proposed amended complaint with their motion at this time.

identify the specific elements of their trademarks, and (2) to allege "that they have ever used these color and year combinations on any product, a prerequisite for common law ownership of a trademark." Id. at *4. The district court similarly dismissed the claims of trade dress infringement and dilution under the Lanham Act, finding that "[n]o Plaintiff has alleged that there is any footwear belonging to any of them bearing the alleged color and year combination, nor has any Plaintiff identified the particular shoe that constitutes the trade dress . . . ." Id. at **4-5. Given its dismissal of the federal claims, the court dismissed the remaining state-law claims, citing the policy "in favor of declining jurisdiction . . . where all federal law claims have been dismissed." Id. at *5 (citing Parker & Parsley Petroleum v. Dresser Indus., 972 F.2d 580, 590 (5th Cir. 1992)).

## II. JURISDICTION

We instructed the parties to brief issues related to our jurisdiction over this appeal. Our only jurisdictional concern in this case is the timeliness of the filing of the notice of appeal. Converse contends that the plaintiffs' notice of appeal was untimely because more than thirty days had lapsed since the district court's order dismissing their claims on January 12, 2005. The plaintiffs counter that the district court did not deny its motion for reconsideration until January 20, 2005, which

would make the notice of appeal filed on February 18, 2005 fall within the thirty-day period.

Even though the Federal Rules of Civil Procedure do not expressly recognize a "motion for reconsideration," such motions may properly be considered either a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment. Hamilton Plaintiffs v. Williams Plaintiffs, 147 F.3d 367, 371 n.10 (5th Cir. 1998). Under the current version of the Federal Rules of Appellate Procedure, both Rule 59(e) motions and those Rule 60(b) motions filed no later than ten days after entry of judgment toll the thirty-day time period within which a party may file its notice of appeal until after entry of the order disposing of the motion.[6] See FED. R. APP. P. 4(a)(4)(A)(v), (vi). Because the notice of appeal was filed within thirty days of the district court's denial of the plaintiffs' motion for reconsideration, we have jurisdiction and proceed to the substantive claims raised in this appeal.

## III. DISCUSSION

On appeal, the plaintiffs have challenged (1) the Memorandum Order dismissing the plaintiffs' claims and denying leave to

---

[6] Under prior law, a Rule 60(b) motion did not toll the running of time for filing a notice of appeal whereas a timely filed Rule 59(e) motion did. See Fischer v. United States, 759 F.2d 461, 465 n.4 (5th Cir. 1985). Pursuant to a 1993 amendment to Rule 4(a)(4), however, it no longer matters how the motion for reconsideration is characterized for purposes of tolling the period for filing a notice of appeal. See FED. R. APP. P. 4(a)(4)(A)(v), (vi).

amend; (2) the Order Regarding Transition that deferred the issuance of a scheduling order during the pendency of the dismissal motion; and (3) orders denying the plaintiffs' Expedited Motion for Reconsideration and denying the plaintiffs' second motion for leave to amend. We consider each issue in turn.

**A. The District Court's Dismissal of the Plaintiffs' Lanham Act Claims Under Rule 12(b)(6)**

This court reviews de novo a dismissal for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). Gen. Elec. Capital Corp. v. Posey, 415 F.3d 391, 395 (5th Cir. 2005). We employ the same standard as the district court and liberally construe the complaint in the light most favorable to the plaintiffs, accepting all well-pleaded facts as true. Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005). Motions to dismiss are rarely granted and generally viewed with disfavor. Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570 (5th Cir. 2005). Unless the plaintiffs cannot prove any set of facts entitling them to relief, the complaint should not be dismissed. Posey, 415 F.3d at 395. We need not, however, accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions in reviewing a district court's dismissal under Rule 12(b)(6). Southland Sec. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 361 (5th Cir. 2004).

### 1. Count 1: Infringement of Federally Registered Marks Under the Lanham Act

Although two of the plaintiffs (Alpha Phi Alpha and Phi Beta Sigma) identified federally registered marks in the complaint, see Compl. ¶ 21, the district court dismissed the claims relating to these marks for failure to adequately allege infringement of these registrations under section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a). Alpha Kappa Alpha Sorority, 2005 WL 65598, at *3. The plaintiffs' brief on appeal does not address the court's action beyond briefly mentioning it. We deem the plaintiffs' appeal relating to their federally registered marks to be abandoned. See Cutrera v. Bd. of Supervisors of La. State Univ., 429 F.3d 108, 114 (5th Cir. 2005). We therefore affirm the portion of the district court's order that dismissed the claims relating to infringement of the plaintiffs' registered trademarks. See Walker v. Thompson, 214 F.3d 615, 625 (5th Cir. 2000) (affirming in part the portion of a district court's grant of summary judgment where the plaintiff had abandoned the issue in her appellate brief).

### 2. Count 2: Unfair Competition Claims Under the Lanham Act

The principal question presented in this case is whether the complaint adequately states a claim for infringement of any common-law trademarks or trade dress. The problems that the district court identified in the plaintiffs' complaint are actually quite narrow. With respect to the plaintiffs' claims of

unfair competition alleging that Converse had unlawfully used their common-law trademarks in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),[7] the district court held that "the Plaintiffs fail to identify any of those common law trademarks."[8]  Id.  Relying principally on the Second Circuit's

---

[7]  Section 43(a) provides, in relevant part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
            . . .
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
15 U.S.C. § 1125(a)(1)(A).

[8]  The complaint refers interchangeably to the two-color/founding year combinations as unregistered trademarks and trade dresses.  Indeed, the distinctions between trademarks and trade dress in the law have largely disappeared.  See 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:1 (4th ed. 2005) ("Today, many types of designations protectable as 'trade dress' are also registrable as 'trademarks.'  Today, unregistered trade dress is protected under federal Lanham Act § 43(a) under the same rules as are trademarks."); see also Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 773 (1992) (noting that "the protection of trademarks and trade dress under § 43(a) serves the same statutory purpose of preventing deception and unfair competition"); Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc., 659 F.2d 695, 701 (5th Cir. 1981) (discussing trademark and trade dress infringement as both deriving from "the common-law tort of 'unfair competition,' or, as it is otherwise known, 'passing off'").  As such, aside from noting any meaningful differences in the case law, we see no compelling reason to

-10-

decision in <u>Landscape Forms, Inc. v. Columbia Cascade Co.</u>, 113 F.3d 373 (2d Cir. 1997), the district court stated that the plaintiffs "merely describe how each organization has a color combination and founding year associated with it and how these same color combinations and years appear on Converse's GREEKPAK shoes, but they do not claim that the color and year combinations are trademarks." <u>Id.</u> In dismissing the trade dress claims, the district court similarly concluded that the plaintiffs had neither "allege[d] that they have ever used the year and color combinations as trade dress" nor "articulated with particularity, as is required, the elements comprising their trade dress." <u>Id.</u> at *4.

We now turn to the complaint to determine whether it suffers from these perceived deficiencies in light of the well-established notice pleading standards. In order to determine whether the plaintiffs claim that their two-color/founding year combinations are trademarks or trade dress, we set out below <u>in haec verba</u> most, although not all, of the references in the plaintiffs' complaint to the plaintiffs' unregistered marks and trade dress:

> ¶ 22: Plaintiffs have also conceived and developed items containing Plaintiffs' distinctive trade dress, which has achieved notoriety as marks used solely by Plaintiffs or their authorized representatives.

---

separately address the trademark and trade dress claims raised under section 43(a).

¶ 24: The founding years and organizational colors that the Plaintiffs have adopted are unique to Plaintiffs' identification and accomplishments and have acquired significant meaning to the members of Plaintiffs' organizations as well as secondary meaning to the general public. The founding years and identifying colors of the organizations are as follows:

| Plaintiff | Founding Year | Distinctive Colors |
|---|---|---|
| Alpha Phi Alpha Fraternity | 1906 | Black and Gold |
| Alpha Kappa Alpha Sorority | 1908 | Pink and Green |
| Kappa Alpha Psi Fraternity | 1911 | Red and White |
| Omega Psi Phi Fraternity | 1911 | Purple and Gold |
| Delta Sigma Theta Sorority | 1913 | Red and White |
| Phi Beta Sigma Fraternity | 1914 | Royal Blue and White |

¶ 27: Since at least as early as 1908, Plaintiffs have also used their marks and trade dress worldwide in connection with the manufacture, sale and licensing of Greek paraphernalia, including apparel, shoe wear, and other products.

¶ 28: Continually, since long prior to the acts complained of herein, Plaintiffs have generated substantial revenues from manufacturing, selling, and licensing for manufacture and sale of, Greek paraphernalia, including apparel, shoe wear, and other products that contain Plaintiffs' marks and trade dress.

¶ 29: The Plaintiffs' marks and trade dress are arbitrary, suggestive and inherently distinctive.

¶ 30: As a result of Plaintiffs' efforts to promote their organizations, trade dress and marks, these marks have acquired in the minds of the public a secondary meaning, and have become distinctive marks denoting identification with and sponsorship from, the Plaintiffs' organizations.

¶ 31: As a further result of Plaintiffs' efforts, the marks are recognized as being associated exclusively with the services and products marketed or licensed by Plaintiffs or their authorized representatives.

¶ 35: The years etched on the [sic] Converse's GREEKPAK shoes and the colors of the shoes match precisely the colors and founding years of Plaintiffs' Greek-based Sororities and Fraternities.

¶ 43: Despite the limitless other marks and trade dress

-12-

that Converse could have chosen, it wrongfully appropriated marks owned by Plaintiffs without permission or other authorization from plaintiffs.

¶ 44: Plaintiffs' marks and trade dress and Converse's GREEKPAK designs are strikingly and confusingly similar, and Converse's use of these marks causes and is likely to continue to cause confusion among consumers and potential consumers of the products of Plaintiffs and their licensed vendors.

¶ 45: Converse's use of these marks and trade dress for the promotion and sale of its shoes is likely to cause confusion as to whether Converse's products are sponsored or licensed by, or affiliated with, Plaintiffs and their marks.

¶ 63: Plaintiffs identifying marks that have been misappropriated by Converse are inherently distinctive and/or have acquired distinctiveness through secondary meaning.

¶ 64: Without authorization or consent, Converse has deliberately and intentionally used Plaintiffs' marks and trade dress in commerce in connection with the manufacturing, advertising, promotion, distribution, sale and offering for sale of products that are directly competitive with products marketed by Plaintiffs and their authorized representatives.

As is evident from the quoted material from the plaintiffs' complaint, the plaintiffs have, indeed, identified the elements (the color and year combinations) comprising their trademarks or trade dress; they have claimed that the color and year combinations are trademarks or trade dress; and they have asserted that Converse infringed upon their trademarks or trade dress in promoting and selling its GREEKPAK shoes. Thus, under the liberal notice pleading standards articulated in Federal Rule of Civil Procedure 8, we conclude that the complaint adequately apprised Converse of the cause of action under section 43(a) of

the Lanham Act.  See Conley v. Gibson, 355 U.S. 41, 47 (1957) ("[A]ll the rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.") (internal quotations omitted); Walker v. S. Cent. Bell Tel. Co., 904 F.2d 275, 278 (5th Cir. 1990) ("Generally speaking if the pleadings provide adequate notice, then an inference may be drawn that all the elements of a cause of action exist.").

As the complaint indicates, when the plaintiffs are able to develop their case, they intend to provide evidence of inherent distinctiveness or of secondary meaning, which will be necessary to establish that their marks or trade dress are protectable. See Sugar Busters, LLC v. Brennan, 177 F.3d 258, 269 (5th Cir. 1999) (noting that, on remand to the district court, the plaintiffs "must demonstrate a high degree of proof to establish secondary meaning").  But judging the complaint alone, it is adequate to describe the marks or dress for which protection is claimed, as well as commercial usage of the marks or dress.

In dismissing the plaintiffs' unregistered trademark and trade dress claims for failure to identify the marks and dress with sufficient particularity, the district court relied on the Second Circuit's decision in Landscape Forms.  Landscape Forms is a very different case.  First, it is not a ruling (or an appeal from a ruling) on a Rule 12(b)(6) motion to dismiss; it is, instead, an appeal from the grant of a preliminary injunction

-14-

following a hearing in the district court.  Landscape Forms, Inc., 113 F.3d at 375.  Moreover, the Second Circuit's conclusion, after reviewing the complaint and the testimony of the plaintiff's witnesses at the hearing, was that the plaintiff had failed "to articulate what makes its products inherently distinctive such that, without proof of secondary meaning, there is reason to believe that confusion is likely."  Id. at 382.

In contrast to the comparatively more detailed description of the claimed marks or dress in the plaintiff's complaint in this case, the complaint in Landscape Forms asserted only that "[t]he product design and configuration of [Landscape's] PetoskeyTM Group Collection employs a number of distinctive elements which, when taken together, constitute a trade dress recognizable by architects, landscape architects and designers, as well as the public at large."  Id. at 381 (internal quotations omitted).  The testimony of the plaintiff's witnesses did little to further elucidate the precise elements of the alleged trade dress.  For example, rather than articulating the "distinctive elements" of the alleged trade dress, Landscape's president remarked that "[t]he look is kind of cantilevered" and "very unexpected."  Id.  An industrial designer at Landscape described the furniture as "seem[ing] to float in this rather heavy-looking framework."  Id.  Faced with a complaint that was vacuous when it came to describing the plaintiff's trade dress and witnesses who were not much more specific, the court concluded that the

-15-

descriptions were "too abstract" and "fail[ed] to indicate what unique combination of features makes the trade dress of the ten items in the Petoskey line inherently distinctive . . . ." Id. at 381-82 ("If the law protected style at such a level of abstraction, Bracque might have prevented Picasso from selling cubist paintings in the United States.").

Citing the "acute" concern for protecting competition for trade dress covering an array of items, the court stated that trade dress law's "focus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its distinct dress." Id. at 380-81.

> Without such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market. Courts will also be unable to shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves protection. Moreover, a plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, i.e., the claimant seeks protection for an unprotectable style, theme, or idea.

Id. at 381.

Nothing in our opinion today conflicts with the Second Circuit's holding in Landscape Forms.[9] In fact, the Second

---

[9] Moreover, the Supreme Court's subsequent pronouncement in Wal-Mart Stores, Inc. v. Samara Bros., Inc. removed any doubt that the Second Circuit's holding that a trade dress action under section 43(a) seeking to demonstrate that a product's design is

-16-

Circuit's analysis actually supports our holding that the complaint sufficiently articulated the elements of the plaintiffs' unregistered trademarks and trade dress under section 43(a) of the Lanham Act such that it survives an initial motion to dismiss and may proceed to the proof of secondary meaning stage.  See Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc., 280 F.3d 619, 635 (6th Cir. 2002) (distinguishing Landscape Forms by noting that "[a] complaint is neither an injunction nor a judgment; it merely puts the defendant on notice of the plaintiff's claims").

Finally, with respect to both the unregistered trademark and trade dress claims, the district court also stated that the plaintiffs had "fail[ed] to allege that they have ever used these color and year combinations on any product, a prerequisite for common law ownership of a trademark."  Alpha Kappa Alpha Sorority, 2005 WL 65598, at *3 (citing Blue Bell, Inc. v. Farah Mfg., Co., 508 F.2d 1260, 1267 (5th Cir. 1975)).  Again, the district court's conclusion in this regard is difficult to square with the excerpts from the complaint discussed above.  See Compl. ¶¶ 27, 28.  Moreover, while we do not disagree with the proposition that plaintiffs must allege use of the unregistered trademarks or trade dress to gain protection under the common law, we note that the court in Blue Bell was concerned with an

distinctive must make a showing of secondary meaning.  529 U.S. 205, 216 (2000).

-17-

entirely different question--namely, whether an internal shipment of goods constituted sufficient commercial use to gain protection as a common-law trademark--than the one presented in this appeal. See Blue Bell, Inc., 508 F.2d at 1265.  Because a fair reading of the complaint demonstrates that the plaintiffs sufficiently alleged commercial use of their trademarks and trade dress to satisfy notice pleading standards, we conclude that the complaint was also not deficient in this regard.

### 3.   Count 3: Anti-Dilution Claim Under the Lanham Act

The district court similarly dismissed the plaintiffs' anti-dilution claims under section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c),[10] because the complaint allegedly "fail[ed] to identify any trademarks or trade dress that any of the Plaintiffs

---

[10]   Section 43(c) provides, in relevant part:

(1) The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection. . . .

. . .

(2) In an action brought under this subsection, the owner of the famous mark shall be entitled only to injunctive relief as set forth in section 1116 of this title unless the person against whom the injunction is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark.  If such willful intent is proven, the owner of the famous mark shall also be entitled to the remedies set forth in sections 1117(a) and 1118 of this title, subject to the discretion of the court and the principles of equity.

15 U.S.C. § 1125(c).

-18-

own or have used that have also been used by Converse." Alpha Kappa Alpha Sorority, 2005 WL 65598, at *5. Supplementing the portions of the complaint excerpted above, the complaint sets forth its anti-dilution claim as follows:

¶ 70: Plaintiffs' marks are distinctive and famous according to a number of factors including, but not limited to, the degree of inherent or acquired distinctiveness of the marks; the duration and extent of use of the mark in connection with Plaintiffs' goods and services; and the degree of recognition of the marks in the trading areas and channels of trade of Plaintiffs and Defendant.

¶ 71: Converse's unauthorized and unlicensed use of Plaintiffs' marks after the marks have become famous has caused dilution of the distinctive quality of the mark, and infringes Plaintiffs' rights to its famous marks in violation of 15 U.S.C. Section 1125(c)(1). Converse's actions, unless restrained, also has the potential to embolden other companies to believe that it is permissible to infringe upon Plaintiffs' marks and trade dress without seeking permission or a license.

¶ 72: Upon information and belief, Converse adopted and is displaying the marks and trade dress with full knowledge of Plaintiffs' rights to its famous marks and with the willful intention to trade on Plaintiffs' reputation as embodied in their marks or cause dilution of such marks. Thus, Converse has willfully violated Plaintiffs' rights under 15 U.S.C. Section 1125(c)(2).

For the reasons described in the preceding section of this opinion, we hold only that the plaintiffs have satisfied the notice pleading requirements to state a claim for dilution of their unregistered marks and trade dress.[11] Accordingly, we

---

[11] In order to eventually prevail on their federal dilution claim, the plaintiffs must prove that the two-color/founding year combinations are "famous and distinctive" and that the organizations experienced "actual economic harm" from Converse's dilution of those marks and dresses. See Advantage Rent-A-Car,

reverse the district court's dismissal of this claim as well.

## B. The District Court's Decision to Postpone the Issuance of a Scheduling Order

We review a district court's administrative management of a case, including its enforcement of local rules and issuance of scheduling orders, for abuse of discretion. Macklin v. City of New Orleans, 293 F.3d 237, 240 (5th Cir. 2002). Rule 16(b) of the Federal Rules of Civil Procedure authorizes federal courts to organize the discovery process through a scheduling order. FED. R. CIV. P. 16(b); see also Barrett v. Atl. Richfield Co., 95 F.3d 375, 380 (5th Cir. 1996). Pending a case surviving a motion to dismiss under Rule 12(b)(6), however, the district court may wish to postpone the issuance of a scheduling order until it decides whether the case merits further factual development. See, e.g., Ehlmann v. Kaiser Found. Health Plan of Tex., 198 F.3d 552, 554 (5th Cir. 2000). The district court cannot be said to have abused its discretion in delaying the issuance of a scheduling order until its ruling on the Rule 12(b)(6) motion.

## C. The District Court's Denials of the Plaintiffs' Motions for Reconsideration and for Leave to Amend the Complaint

In view of our decision on the dismissal of the plaintiffs'

---

Inc. v. Enter. Rent-A-Car, Co., 238 F.3d 378, 380 (5th Cir. 2001). The fame of the mark need only be proven within the relevant market for consumers of athletic shoes, not in a broader market. Id. (citing RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 25 cmt. e (1995)). The resolution of these issues, however, depends upon further factual development.

complaint, the appeals from the district court's denial of the plaintiffs' motion for reconsideration and from its denial of the plaintiffs' second motion for leave to amend the complaint are moot.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the portion of the district court's order dismissing the plaintiffs' claims under section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).  We REVERSE the portion of the district court's order dismissing the plaintiffs' claims under section 43(a) and (c) of the Lanham Act, 15 U.S.C. § 1125(a),(c).  Consistent with this opinion, we VACATE the portion of the district court's order declining to exercise supplemental jurisdiction over the plaintiffs' state-law claims for lack of subject-matter jurisdiction.  Costs shall be borne by Converse.