# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 30, 2021

Lyle W. Cayce
Clerk

No. 20-30442

CARRINGTON JACKSON, *on behalf of the minor child* TRAVON CARTER; TRAVIS WATSON, *on behalf of the minor child* TRAVON CARTER; PHYLLICIA CARTER, *on behalf of the minor child* TRAVON CARTER; CASSANDRA CARTER, *on behalf of the minor child* TRAVON CARTER,

*Plaintiffs—Appellants*,

*versus*

SIDNEY J. GAUTREAUX, III, *Sheriff*, *East Baton Rouge Parish*; SHANNON BROUSSARD, *Detective*; CHARLES MONTGOMERY, *Detective*; SCOTT HENNING, *Detective*; CHRISTOPHER MASTERS, *Detective*; VERNER BUDD, *Sergeant*; MICHAEL BIRDWELL, *Lieutenant*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:17-CV-105

Before DAVIS, DUNCAN, and OLDHAM, *Circuit Judges*.

ANDREW S. OLDHAM, *Circuit Judge*:

Travis Stevenson repeatedly slammed his vehicle into a police cruiser and a concrete pillar in front of an apartment building while yelling "Kill

No. 20-30442

me!" to officers who were trying to control the scene. After making repeated but unsuccessful efforts to deescalate the situation and to disable Stevenson's vehicle, officers shot and killed him. At summary judgment, the district court granted the officers qualified immunity. We affirm.

I.

At approximately 8:30 p.m. on February 23, 2016, Kimula Porter called 911 to report that her boyfriend, Travis Stevenson, physically assaulted her and her daughter with pepper spray, smashed a hole in the wall with a beer bottle, took her wallet, and fled from their shared apartment. After Stevenson left, he called and texted Porter to say he was going to commit suicide.

Around 9:50 p.m., Michael Birdwell, a lieutenant in the East Baton Rouge Sherriff's Office, located Stevenson. Stevenson was in a car, which was turned off and parked next to an apartment building. An SUV was parked to the left of Stevenson, an industrial-sized dumpster was on his right, and the building was directly in front of him. The Louisiana State Police ("LSP") Criminal Investigation Division created a scale diagram of the scene:



Lieutenant Birdwell parked his patrol unit behind and perpendicular to Stevenson's car, approached the driver's side where Stevenson was seated, and knocked on the window. Stevenson ignored him at first, so Birdwell kept knocking. But then Stevenson turned on the car as if to drive away. Lieutenant Birdwell attempted to end the confrontation peacefully by using his pocketknife to break the driver's-side window and remove Stevenson from the vehicle. Before Lieutenant Birdwell could remove Stevenson, however, Stevenson placed his car in reverse and slammed into the patrol unit so hard that it caused the patrol unit to crash into a nearby parked car and deployed its airbags.

Detective Scott Henning arrived on the scene. He ordered Stevenson to exit the vehicle. Stevenson refused to comply and repeatedly yelled "Kill me!" By this time, Lieutenant Birdwell was positioned in front of Stevenson's car—between the car and the apartment building. Stevenson then shifted the car into drive and accelerated toward Lieutenant Birdwell. Believing Stevenson was trying to run over Birdwell and that Birdwell was in a position to be injured or killed, Detective Henning shot his firearm toward Stevenson. The bullet didn't hit Stevenson; it hit one of the windows, and some of the shattered glass hit Lieutenant Birdwell. As Stevenson accelerated toward him, Lieutenant Birdwell jumped back and hit the parked SUV. Stevenson crashed into a pole in front of the apartment building. He then shifted back into reverse and slammed into the patrol unit again.

Shortly thereafter, several other deputies arrived on the scene. One fired two or three shots into the driver's-side tire in an attempt to disable the vehicle. The shots didn't stop Stevenson, who accelerated forward and then back into the patrol unit again and again. While Stevenson was oscillating between the apartment building and the patrol unit, Lieutenant Birdwell was trapped in Stevenson's path.

Eventually, officers opened fire on the vehicle. Stevenson sustained seven gunshot wounds and was pronounced dead on the scene. The entire episode—from the time Lieutenant Birdwell spotted the car to the time officers notified dispatch that Stevenson was down—lasted 85 seconds.

After the incident, the Sheriff's Office contacted the LSP Criminal Investigations Division to study the shooting. The LSP interviewed Porter, her daughter, and each of the officers. The LSP ultimately concluded there was no criminal misconduct, as the officers' actions were consistent with those of a reasonably prudent police officer facing the same circumstances.

Stevenson's survivors sued the officers under 42 U.S.C. § 1983. Plaintiffs alleged that six officers used excessive force to seize Stevenson in violation of the Fourth Amendment. Plaintiffs further alleged that a seventh defendant, Sheriff Gautreaux, violated the Fourth Amendment by unreasonably failing to train his officers. At summary judgment, the district court held that Plaintiffs failed to overcome the officers' qualified immunity. Plaintiffs timely appealed.

## II.

Our review is de novo. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). "Qualified immunity includes two inquiries. The first question is whether the officer violated a constitutional right. The second question is whether the right at issue was clearly established at the time of the alleged misconduct." *Ibid.* (quotation omitted). Here we need only decide the first question: Plaintiffs cannot show a Fourth Amendment violation for (A) excessive force or (B) failure to train.

## A.

We start with excessive force. "To establish excessive force under the Fourth Amendment, a plaintiff must demonstrate (1) an injury, which

(2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Hutcheson v. Dallas County*, 994 F.3d 477, 480 (5th Cir. 2021) (quotation omitted). When an injury is uncontested, the court need only consider the second two elements—asking whether each officer's "resort to deadly force was unreasonable and excessive when the facts are viewed 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Ratliff v. Aransas County*, 948 F.3d 281, 287–88 (5th Cir. 2020) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The "excessive" and "unreasonable" inquiries require the court to exercise "cautio[n] about second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation." *Ryburn v. Huff*, 565 U.S. 469, 477 (2012) (per curiam).

The "reasonableness" inquiry always requires the court to consider "the crime's severity, the suspect's threat, and whether the suspect is actively resisting arrest or trying to flee." *Hutcheson*, 994 F.3d at 480. But courts assess the reasonableness of using *deadly* force by considering whether a "suspect poses a threat of serious physical harm, either to the officer or to others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). "Stated differently, '[a]n officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm.'" *Batyukova v. Doege*, 994 F.3d 717, 725 (5th Cir. 2021) (alteration in original) (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)).

While conducting this analysis, we must remain ever mindful that "Fourth Amendment reasonableness is predominantly an *objective* inquiry." *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011) (emphasis added) (quotation omitted). If "the circumstances, viewed objectively, justify the challenged action," then subjective intent doesn't matter. *Ibid.* (quotation omitted).

No. 20-30442

"This approach recognizes that the Fourth Amendment regulates conduct rather than thoughts; and it promotes evenhanded, uniform enforcement of the law." *Ibid.* (citation omitted).

Although our inquiry is necessarily fact-intensive, three of our precedents all but determine today's outcome. The first is *Fraire v. City of Arlington*, 957 F.2d 1268 (5th Cir. 1992). There, an officer chased a car until it struck a curb. *Id.* at 1270–71. The driver then backed up toward the officer's car and sped away. *Id.* at 1271. The officer chased again; the driver crashed again; and the driver sped away again. *Ibid.* Eventually, the driver turned around and drove toward the officer. *Ibid.* The officer fired one shot and killed the driver. *Id.* at 1271–72. We held the officer did not violate the Fourth Amendment because he reasonably attempted to defend himself against the driver. *Id.* at 1274–77.

Second, consider *Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007). There, an officer stopped a car and started walking to the driver's-side window. *Id.* at 316. When the officer got about 8 to 10 feet from the car, the driver suddenly accelerated toward him. *Ibid.* As soon as the officer realized he wasn't going to be able to get out of the car's path, he drew his firearm and fired one bullet at the car. *Ibid.* The bullet went straight through the driver's lungs and heart, and he died of his wounds. *Ibid.* We held the officer responded reasonably "in firing his weapon when threatened by a nearby accelerating vehicle, even if, owing to the limited time available to respond, the shot was fired when or immediately after the officer was hit." *Id.* at 322.

Third, take *Ramirez v. Guadarrama*, 2021 WL 257199, --- F.4th --- (5th Cir. Feb. 8, 2021). That case did not involve a driver using a vehicle as a weapon against an officer. But *Ramirez* held that an officer's conduct cannot be held "unreasonable" under the Fourth Amendment in the absence of allegations or evidence regarding an "alternative course the defendant

6

officers should have followed that would have led to an outcome free of potential tragedy." *Id.* at *4. We rejected the plaintiffs' Fourth Amendment claim because it was "not apparent what might have been done differently to achieve a better outcome under these circumstances." *Ibid.*

*Fraire*, *Hathaway*, and *Ramirez* require us to find no Fourth Amendment violation here. That's for three independent reasons. First, like the drivers in *Fraire* and *Hathaway*, Stevenson was using his car as a weapon. *See Fraire*, 957 F.2d at 1271–72; *Hathaway*, 507 F.3d at 316. It does not matter whether Stevenson (unlike the drivers in our precedents) "ha[d] not threatened or attempted to harm any of the deputies." Blue Br. 34. Suppose a small child finds his parents' loaded pistol and plays with it, not intending to shoot anyone. Is the pistol any less a weapon when the child doesn't intend to shoot it? Obviously not. Does the pistol constitute a deadly threat to others when the child doesn't intend to shoot it? Obviously. So too with Stevenson's car.

Second, Stevenson and the drivers in our precedents exhibited volatile behaviors that contributed to the officers' "justifi[cation] in firing to prevent . . . death or great bodily harm." *Fraire*, 957 F.2d at 1276; *see id.* at 1276 n.30 (stating the driver was "drinking while driving, erratic[ally] driving, [driving at a] high speed through a residential subdivision, [and] twice crashing the car"); *Hathaway*, 507 F.3d at 315–16 (stating the driver was swerving while he and his passengers were hanging out the window, making gang signs, and yelling the name of a well-known gang). Before the incident, Stevenson was drinking and using drugs; he pepper sprayed his girlfriend and her daughter in a fit of rage; he stole his girlfriend's wallet and drove away while intoxicated; he repeatedly told his girlfriend and the officers that he was suicidal; he repeatedly yelled "Kill me!" at one officer while ignoring commands from other officers; and he repeatedly rammed his car into a patrol unit and a concrete pillar while inches away from hitting Lieutenant

Birdwell. Stevenson's immunity to reason was patent; the risk of injury or death to the Lieutenant was equally patent.

Third, Plaintiffs have not produced any evidence that suggests the officers might've had a reasonable alternative course of action. *See Ramirez*, 2021 WL 257199, at *4. When asked at oral argument for a reasonable alternative, Plaintiffs' counsel said that officers should've "step[ped] back and allow[ed] Mr. Stevenson to finish the episode, and then they could have acted." Oral Arg. at 42:33–41. That's absurd. Lieutenant Birdwell was inches from the front left bumper of Stevenson's car while he was repeatedly driving it backwards and forwards and violently crashing into things. Whatever reasonable alternatives officers might've had, doing nothing and praying for the best is not one of them. And without a reasonable alternative to the officers' conduct, Plaintiffs are without a Fourth Amendment claim that the officers behaved "unreasonably." *See Ramirez*, 2021 WL 257199, at *4.

The district court therefore correctly held, in accordance with our precedent, that Plaintiffs' excessive-force claim fails as a matter of law.[*]

## B.

Plaintiffs also contend that the district court erred by granting summary judgment on their failure-to-train claim against the Sheriff. The district court held that Plaintiffs forfeited this claim by failing to plead it in

---

[*] For the first time at oral argument, Plaintiffs attempted to distinguish between the officers' first four shots and their subsequent ones. As we've repeatedly and emphatically held, we cannot and will not consider arguments raised for the first time at oral argument. *See, e.g.*, *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 297 (5th Cir. 2019); *Martinez v. Mukasey*, 519 F.3d 532, 545–46 (5th Cir. 2008); *United States v. Bigelow*, 462 F.3d 378, 383 (5th Cir. 2006); *United States v. Ogle*, 328 F.3d 182, 191 n.9 (5th Cir. 2003); *Comsat Corp. v. FCC*, 250 F.3d 931, 936 n.5 (5th Cir. 2001); *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 270 (5th Cir. 1998).

their complaint and raising it only in response to the officers' motion for summary judgment. We agree with the district court.

It is well settled in our circuit that "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)). We've repeatedly emphasized this rule. *See, e.g.*, *Pittman v. U.S. Bank, N.A.*, 840 F. App'x 788, 789–90 (5th Cir. 2021) (per curiam); *Price v. Wheeler*, 834 F. App'x 849, 859 n.8 (5th Cir. 2020); *Park v. Direct Energy GP, LLC*, 832 F. App'x 288, 295 (5th Cir. 2020) (per curiam); *Lumar v. Monsanto Co.*, 795 F. App'x 293, 294 n.1 (5th Cir. 2020) (per curiam); *Brown v. Wilkinson Cnty. Sheriff Dep't*, 742 F. App'x 883, 884 (5th Cir. 2018) (per curiam); *Sims v. City of Madisonville*, 894 F.3d 632, 643 (5th Cir. 2018) (per curiam); *Strong v. Green Tree Servicing, Inc.*, 716 F. App'x 259, 265 n.7 (5th Cir. 2017) (per curiam); *Jones v. Wells Fargo Bank, N.A.*, 858 F.3d 927, 935 (5th Cir. 2017); *United Motorcoach Ass'n v. City of Austin*, 851 F.3d 489, 492 n.1 (5th Cir. 2017); *Byrnes v. City of Hattiesburg*, 662 F. App'x 288, 290 n.1 (5th Cir. 2016) (per curiam).

Plaintiffs alleged that Sheriff Gautreaux failed to adequately train his officers to avoid *excessive force*. After the officers moved for summary judgment, Plaintiffs argued for the first time that the Sheriff failed to adequately train his officers to deal with *mentally unstable individuals*. This is precisely the sort of surprise switcheroo that our precedents forbid.

Plaintiffs contend that the district court should have construed their new summary-judgment argument as an implied motion to amend their complaint under Federal Rule of Civil Procedure 15. It's true that we've done that in the past, *see, e.g.*, *Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 200 (5th Cir. 2015) (per curiam), although it's unclear how cases like *Pierce*

are consistent with our rule of orderliness and our numerous published precedents holding litigants forfeit arguments raised for the first time at summary judgment. Moreover, the sort of relief mentioned in *Pierce*—construing a request for *X* as an implied request for *Y*—is normally reserved for pro se litigants. *See, e.g.*, *United States v. Riascos*, 76 F.3d 93, 95 (5th Cir. 1996) ("conclud[ing] that the district court's failure to construe [the pro se plaintiff's] 'traverse' as a motion to amend was an abuse of discretion"); *Cooper v. Sherriff, Lubbock Cnty.*, 929 F.2d 1078, 1081 (5th Cir. 1991) ("Under the liberal construction given to pro se pleadings, the magistrate judge should have construed Cooper's reply to the defendant's new answer as a motion to amend the complaint."). Of course, Plaintiffs in this case did not appear pro se; they were represented by experienced counsel. Plaintiffs' counsel never moved to amend under Rule 15. Their failure to do so forfeited the issue and prevented the district court from considering the merits of their summary-judgment argument.

AFFIRMED.