United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 10, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

))))))))))))))))))))))))))))

No. 06-30300
Summary Calendar

))))))))))))))))))))))))))))

DANIEL C. LINER

Plaintiff-Appellee-Cross-Appellant

v.

HOSPITAL SERVICE DISTRICT NO 1 OF JEFFERSON PARISH, doing
business as West Jefferson Medical Center

Defendant-Appellant-Cross-Appellee

_____

Appeals from the United States District Court
for the Eastern District of Louisiana
No. 2:03-CV-03311

_____

Before DeMOSS, STEWART, and PRADO, Circuit Judges.

PER CURIAM:[*]

Before the court are cross-appeals brought after a jury

trial that resulted in a verdict for the plaintiff in a case of

disability discrimination. The defendant argues that the jury's

verdict must be set aside because the plaintiff refused to

participate in the interactive process required to develop a

reasonable accommodation for his disability. The plaintiff,

_____

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

meanwhile, appeals the district court's order dismissing the jury's award of punitive damages.  For the reasons that follow, we AFFIRM.

## I. FACTUAL BACKGROUND

In March 2001, Plaintiff Daniel C. Liner ("Liner") was hired as an accountant for Defendant Hospital Service District No. 1 of Jefferson Parish d/b/a West Jefferson Medical Center ("WJMC"). As an accountant for WJMC, Liner was frequently required to work more than forty hours per week to meet certain deadlines, as were all WJMC accountants.  In August 2002, Liner was diagnosed with malignant hypertension and cardiovascular disease.  Pursuant to his physician's instructions, Liner was no longer allowed to work more than forty hours per week.  Liner informed his supervisor Ron Bailey of this restriction on August 28, 2002, and requested a reasonable accommodation of working only forty hours a week. Liner then took leave under the Family Medical Leave Act ("FMLA") from August 30, 2002, to September 23, 2002, and from September 25, 2002, to November 25, 2002.

According to WJMC, after Liner requested an accommodation, WJMC repeatedly sought more information from Liner regarding his medical condition and the limitations imposed by it, but Liner was not responsive.  WJMC did learn from Liner's physician in January 2003 that Liner had to leave work by 5:00 p.m. each day to attend a martial arts class for medical reasons.  Further,

2

Liner was unable to work on weekends, even if he had not worked forty hours that week.  WJMC determined that these restrictions made it impossible for Liner to perform the essential functions of his accounting position, as WJMC's accountants were regularly required to work more than forty hours a week in order to meet various deadlines.

On January 22, 2003, Liner secretly tape recorded a meeting he had with Mark McGinnis ("McGinnis," a financial official with WJMC) and Francine Miguel ("Miguel," WJMC's Human Resources Director).  At the meeting, McGinnis and Miguel informed Liner that, due to his medical restrictions, he could no longer work as an accountant for WJMC and that he was being terminated. McGinnis and Miguel did encourage Liner to look online at other job listings within WJMC and submit applications for any positions in which he was interested.  According to WJMC, it was aware of several positions that were open at that time and met Liner's medical restrictions; however, the jobs were clerical in nature and WJMC claims it did not want to embarrass Liner by offering him those lower positions.  Liner did not review the positions online, but instead filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC").

## II. PROCEDURAL HISTORY

Following receipt of his right-to-sue letter from the EEOC,

Liner brought suit against WJMC for disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213 (2000), disability discrimination and retaliation under Louisiana law, LA. REV. STAT. ANN. §§ 51:2256 & 23:967, and FMLA violations, 29 U.S.C. § 2615.[1] The district court dismissed Liner's disability harassment and state law claims on summary judgment. The case then proceeded to trial in front of a jury. Following four days of testimony, the district court granted Liner's motion for directed verdict on the issue of whether WJMC regarded Liner as disabled. The remainder of the case was submitted to the jury, which rejected all of Liner's retaliation claims under the ADA and FMLA, but found that WJMC had discriminated against Liner because it regarded him as disabled. As a result, the jury awarded Liner $45,000 for lost pay, $0 for emotional distress, and $250,000 in punitive damages. The district court also awarded Liner $87,460 in attorneys' fees, but denied Liner's motion for front pay.

Two months after the verdict, but before the district court entered a final judgment, WJMC filed a motion to vacate the punitive damages award on the ground that punitive damages are not available under the ADA against a political subdivision such as WJMC. See 42 U.S.C. § 1981a(b)(1). The district court

---

[1] Liner's initial complaint also included a claim that WJMC violated ERISA, 29 U.S.C. § 1140. Although it is unclear what happened to that claim, Liner did not pursue it at trial or on appeal.

4

dismissed the motion as premature.  The district court entered final judgment, at which time WJMC renewed its motion for judgment as a matter of law and alternatively asked the district court to alter or amend the final judgment.  The district court granted WJMC's motion with respect to the punitive damages award, dismissed the $250,000 in punitive damages, and issued an amended judgment to that effect.  Both parties appealed.  We have jurisdiction pursuant to 28 U.S.C. § 1291 and now turn to the merits of our decision.

## III. DISCUSSION

On appeal, WJMC challenges whether there was sufficient evidence to support the jury's determination that WJMC failed to reasonably accommodate Liner's perceived disability and argues that Liner refused to work with WJMC in fashioning an appropriate accommodation.  Liner appeals the district court's decision to strike the punitive damages award, claiming that WJMC waived its argument on that point by not raising it before the end of trial. We address each argument in turn.

A.    Sufficiency of the Evidence

WJMC contends on appeal that it cannot be liable for failing to accommodate Liner's disability because Liner terminated the interactive process that is required by the ADA to come up with a reasonable accommodation for his disability.  Specifically, WJMC asserts that it met its obligations under the ADA by telling

5

Liner to look for jobs with WJMC on the internet after WJMC terminated Liner's employment and that it cannot be held liable for Liner's failure to do so.  The jury specifically found that WJMC did not make a good faith effort to reasonably accommodate Liner's disability.

We grant great deference to a jury's verdict.  Dresser-Rand Co. v. Virtual Automation, Inc., 361 F.3d 831, 838 (5th Cir. 2004).  "We will overturn a jury verdict 'only if we conclude that, after viewing the trial record in the light most favorable to the verdict, there is no legally sufficient evidentiary basis for a reasonable jury to have found for the prevailing party.'" Johnson v. Louisiana, 369 F.3d 826, 830 (5th Cir. 2004) (quoting Mato v. Baldauf, 267 F.3d 444, 450-51 (5th Cir. 2001)).

Once an employee requests an accommodation for a disability, ADA regulations state that "it may be necessary for the [employer] to initiate an informal, interactive process" designed to craft a reasonable accommodation.  29 C.F.R. § 1630.2(o)(3). This court has held that "when an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA."  Loulseged v. Akzo Nobel, Inc., 178 F.3d 731, 736 (5th Cir. 1999) (citing Taylor v. Phoenixville Sch. Dist., 174 F.3d 142, 165 (3d Cir. 1999); Bultemeyer v. Fort Wayne Cmty. Schs., 100 F.3d 1281, 1285 (7th Cir. 1996)).  However, because the responsibility for fashioning a reasonable accommodation is

6

shared between the employer and the employee, the employer is not liable under the ADA if the breakdown in the interactive process is traceable to the employee.  Id.  Consequently, the process must be viewed on a case-by-case basis.  Id.

Here, the evidence shows that WJMC terminated Liner after it determined he could no longer perform the essential functions of his accounting job.  WJMC then told Liner that he should look on the internet for other positions with WJMC and apply for the ones in which he was interested, but that he would be treated like any other applicant and may or may not get another job with WJMC. WJMC admitted that it was aware of several clerical positions within WJMC that Liner may have been able to perform but did not offer him those positions because it did not want to embarrass Liner.[2]  In sum, instead of working with Liner to identify a vacant position within WJMC that he might be able to transfer to, WJMC terminated Liner and told him it was his responsibility to find another job within WJMC.  See 29 C.F.R. § 1630.2(o)(2)(ii) (stating that a reasonable accommodation may include reassignment to a vacant position).

Based on this evidence, the jury was entitled to find that WJMC did not make a good faith effort to reasonably accommodate

---

[2]  WJMC claims that it subsequently determined that Liner was not qualified for any of those positions.  However, because this determination was not made until some time after Liner was terminated, it is irrelevant to WJMC and Liner's "interaction" at the time of Liner's termination.

Liner and that Liner was not responsible for the breakdown in the interactive process. See Cutrera v. Bd. of Supervisors of La. State Univ., 429 F.3d 108, 113, (5th Cir. 2005) ("An employer may not stymie the interactive process of identifying a reasonable accommodation for an employee's disability by preemptively terminating the employee before an accommodation can be considered or recommended."). In upholding the jury's verdict, we are not saying that WJMC was required to give Liner another position in order to reasonably accommodate his disability. Rather, we hold only that WJMC's conduct is sufficient to support the jury's determination that WJMC did not attempt to reasonably accommodate Liner's disability in good faith. Again, each set of facts must be judged on a case-by-case basis.

WJMC relies heavily on our decision in Loulseged for its claim that its actions were sufficient to avoid liability; however, this case is significantly different from Loulseged. In Loulseged, the employer provided the plaintiff with several accommodations for her back injury, including permitting the plaintiff to use contract workers whenever she needed to transport something heavy. 178 F.3d at 733. When the employer decided the contract workers could no longer be used for this purpose, the plaintiff abruptly quit. Id. The evidence showed that the employer was looking into new accommodations for the plaintiff, but that she never commented on the accommodations and quit before any could be implemented. Id. In that case, we held

8

that the breakdown in the interactive process was attributable to the plaintiff and that the employer was not liable as a result. Id. at 737-40.

Here, in contrast, Liner did not quit, but was fired and immediately escorted out of the building, effectively ending the interactive process. As a result, we cannot say that the jury was unreasonable in determining that the breakdown in the interactive process was not due to Liner's conduct. Therefore, we affirm the district court's judgment regarding WJMC's liability.

B. Punitive Damages

Liner cross-appeals the district court's decision to deny him punitive damages following WJMC's motion to alter or amend judgment. Liner does not contend that political subdivisions such as WJMC are, in fact, liable for punitive damages; rather, he argues that WJMC waived this argument by not presenting it until after the jury returned its verdict. WJMC asserts that, under the plain error doctrine, the district court and this court are permitted to address the punitive damages error and correct the initial judgment. We agree with WJMC.

It is uncontested that, as a political subdivision, WJMC is not liable for punitive damages under the ADA. See 42 U.S.C. § 1981a(b)(1) (authorizing punitive damages in discrimination cases unless defendant is a government, government agency, or political subdivision). It is also uncontested that WJMC did not

9

raise this issue until two months after the jury returned its verdict, but before the district court entered its final judgment.[3]

This court considered a similar situation in <u>Oden v. Oktibbeha County</u>, 246 F.3d 458 (5th Cir. 2001). There, the defendant, a sheriff who was sued in his official capacity, failed to object in the district court to the imposition of punitive damages on the ground that they were precluded by § 1981a(b)(1). <u>Id.</u> at 465-66. On appeal, this court held that the defendant had failed to preserve his error on the issue of punitive damages. <u>Id.</u> at 466. However, we went on to consider the defendant's argument under the plain error standard of review. <u>Id.</u> We determined that the imposition of punitive damages in violation of § 1981a(b)(1) was plain error and reversed that portion of the district court's judgment. <u>Id.</u>

Under the plain error standard of review, which is used when error is not preserved at trial, the appellant must demonstrate that "(1) an error occurred; (2) the error was plain, which means clear or obvious; (3) the plain error affects substantial rights; and (4) failing to correct the error would seriously impact the fairness, integrity or public reputation of judicial

---

[3] Although the pretrial order listed "[w]hether punitive liability can be established herein" as a contested issue of law, WJMC admitted in its filings before the district court that it did not become aware of the legal impediment to punitive damages imposed by § 1981a(b)(1) until after trial was completed.

proceedings." <u>Fiber Sys. Int'l, Inc. v. Roehrs</u>, 470 F.3d 1150, 1158 (5th Cir. 2006) (citing <u>Septimus v. Univ. of Houston</u>, 399 F.3d 601, 607 (5th Cir. 2005)). Here, as in <u>Oden</u>, the punitive damages award was plainly erroneous, as it is uncontested that WJMC is not liable for punitive damages under § 1981a(b)(1). Had the district court not corrected the error, <u>Oden</u> would have compelled us to do so. Consequently, the district court did not err when it dismissed the punitive damages award against WJMC.

Liner argues that the Supreme Court's decision in <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 126 S. Ct. 1235 (2006), abrogates or modifies the plain error doctrine. Liner misunderstands the effect of <u>Arbaugh</u>. In <u>Arbaugh</u>, the Supreme Court held that Title VII's requirement that an employer have at least fifteen employees was not jurisdictional, but rather an element of the plaintiff's claim for relief. 126 S. Ct. at 1245. Liner cites <u>Arbaugh</u> for the proposition that a motion for failure to state a claim cannot be brought post-trial and argues that WJMC was required to raise the punitive damages issue by way of such a motion before trial was complete. Liner's reasoning here is flawed. While the Supreme Court did state that a motion for failure to state a claim cannot be brought post-trial, <u>id.</u> at 1240, it did not purport to eliminate all other post-trial avenues for relief, such as the plain error doctrine. Indeed, had the Supreme Court intended to do away with the plain error doctrine, it would have been more explicit, as many of the

11

circuit courts use the plain error standard of review for arguments not preserved at trial. See, e.g., Fonten Corp. v. Ocean Spray Cranberries, Inc., 469 F.3d 18, 21-22 (1st Cir. 2006); Johnson Controls, Inc. v. Jay Indus., Inc., 459 F.3d 717, 728 (6th Cir. 2006); Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993). The Court in Arbaugh, however, did not address, apply, or even mention the plain error doctrine.[4]

As a result, our plain error doctrine remains intact. See Fiber Sys., 470 F.3d at 1158 (applying plain error doctrine post-Arbaugh). Consequently, pursuant to the discussion above concerning Oden, the district court did not err in dismissing the award of punitive damages against WJMC.

---

[4] This is likely because the error in Arbaugh was not "plain." Instead, determining error required post-trial discovery and development of the record to ascertain which individuals should be counted as "employees" for Title VII purposes. Here, in contrast, no discovery was needed to decide that error occurred as it is clear that WJMC is a political subdivision not subject to punitive damages.

12

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

AFFIRMED.