Aaron LOCKHART, Plaintiff,

v.

SYSTEMS MADE SIMPLE, INC. and TEKsystems, Inc., Defendants.

No. A–13–CV–326 ML.

United States District Court, W.D. Texas, Austin Division.

Signed Dec. 15, 2014.

Kell Ascher Simon, The Law Offices of Kell A. Simon, Austin, TX, for Plaintiff.

Connie Cornell, Elizabeth S. Chestney, Hannah Robertson Miller, Desiree Brutocao, Cornell Smith Mierl and Brutocao LLP, Austin, TX, John L. Valentino, Lawrence M. Ordway, Bousquet Holstein PLLC, Syracuse, NY, for Defendants.

## MEMORANDUM OPINION AND ORDER

MARK LANE, United States Magistrate Judge.

Before the Court are Defendant Systems Made Simple, Inc.'s Motion for Summary Judgment, filed July 11, 2014 (Clerk's Dkt. No. 40); Defendant TEKsystems, Inc.'s Motion for Summary Judgment and Appendix, filed July 11, 2014 (Clerk's Dkt. Nos. 41, 42); Plaintiff Aaron Lockhart's Response in Opposition to Defendants' Motions for Summary Judgment, filed July 25, 2014 (Clerk's Dkt. No. 43); Defendant TEKsystems, Inc.'s Reply in Support of its Motions for Summary Judgment, filed August 8, 2014 (Clerk's Dkt. No. 47); and Defendant Systems Made Simple, Inc.'s Reply in Support of its Motion for Summary Judgment, filed August 15, 2014 (Clerk's Dkt. No. 48).

The parties consented to proceed before the undersigned United States Magistrate Judge, and the case was transferred by order dated November 12, 2014 (Clerk's Dkt. No. 55). After reviewing the parties' pleadings; relevant case law, as well as the entire case file, the undersigned issues the following opinion and order.

## I. SUMMARY JUDGMENT FACTS

Plaintiff Aaron Lockhart ("Lockhart") was formerly employed by TEKsystems, Inc. ("TEKsystems"), a staffing agency, and Systems Made Simple, Inc. ("SMS"), an information technology systems provider (jointly, "Defendants"). Lockhart entered into a one-year standard hourly employment contract with TEKsystems on September 15, 2011 and was assigned to provide services to SMS through a staffing agreement between SMS and TEKsystems. (SMS. Mot. for Summ. Jt. ("SMS.Mot.") Ex. 1 ("Lockhart Depo.") at 46, 96 & Ex. 4). Lockhart began rendering services pursuant to his contract on September 26, 2011.[1] (Id. Ex. 4).

SMS, in turn, assigned Lockhart to work as an Integration Manager—Linux ("Linux Position") on a project ("VA Project") for the U.S. Veterans Administration ("VA"). The Linux Position had been advertised as a completely remote, work-from-home position. (Lockhart Depo. at 53–54). Justin Bibb ("Bibb"), a recruiter for TEKsystems, confirmed to Lockhart that the position was offsite. (Id.). However, during a teleconference on November 10, 2011, Lockhart discovered the position would require him to be onsite. (Id. at 55–56). After the teleconference, Lockhart contacted Randy Cox ("Cox"), a TEKsystems employee and Lockhart's direct supervisor, and told Cox he understood the position was to be remote. (Id. at 7–8; SMS Mot. Ex. 2 ("Cox Depo.") at 13–14). Cox confirmed that the position was mistakenly advertised as remote. (Cox. Depo. at 14).

Cox told Lockhart he would take a "two-pronged approach" to the issue—first, he would look for available offsite positions

---

1. Although Defendants state Lockhart began rendering services for SMS pursuant to his contract on September 21, 2011, the Standard Hourly Employment Contract with TEK-systems indicates he began rendering services for SMS on September 26, 2011. (Lockhart Depo. Ex. 4).

with SMS, and second, he asked Lockhart if Lockhart would be willing to work onsite for a three-week training period and work remotely thereafter. (Lockhart Depo. at 60). Later that day, Lockhart again called Cox and told Cox he has an anxiety disorder that prevents him from working in an office environment.[2] (Cox Depo. at 17). Cox asked if Lockhart could still come in for the three-week training period and Lockhart indicated that he would be willing to try.[3] (Lockhart Depo. at 60).

Cox then called Patricia Winnop ("Winnop"), the liaison between SMS and the VA, and told her about the mistaken advertisement. (Cox Depo. at 42). On November 15, 2011, Winnop emailed Cox and David Buckley ("Buckley"), SMS's onsite manager for the VA Project, regarding the mixup. (Pltf. Resp. Ex. 8). She stated that she spoke with the "Chief of Unix,"[4] a supervisor on the VA Project, "and [the VA] will be flexible to help Aaron to work remotely. But first, need him to come in and get on site hands on experience." (Id.). Cox forwarded Winnop's email to Lockhart, and Lockhart thanked Cox for his "willingness to work with me on this." (Pltf. Resp. Ex. 8).

On November 17, 2011, the date Lockhart was to start the VA Project, Lockhart did not appear for work. (Lockhart Depo. at 81; Cox Depo. at 23 & Ex. 10). According to Lockhart, he had a panic attack triggered by trepidation because no one informed him why he had to report onsite, or what to expect when he reported onsite, despite his requests for that information. (Lockhart Depo. at 61, 64). That morning, Lockhart called Buckley. (Lockhart Depo. at 64). Lockhart informed Buckley that he had a panic attack, which prevented him from reporting onsite and explained he has an anxiety disorder which precipitated the panic attack. (Id.). Buckley told Lockhart that he understood and to "[d]o what you have to do." (Id.). Buckley advised Lockhart to contact Cox to inform him about the situation. (Id.).

Lockhart emailed Cox the same day at 8:46 a.m. (Pltf. Resp. Ex. 9). In the email, Lockhart explained that he was unable to perform his work onsite due to his anxiety disorder, and insisted he work remotely, per his contract with TEKsystems.[5] (Id.). At 10:40 a.m., Cox emailed Bill Sackewitz ("Sackewitz"), his supervisor at SMS, to explain the events. (Pltf. Resp. Ex. 10 at 2). Cox disclosed in the email that Lockhart "suffers from some kind of social anxiety disorder that makes working in an office environment very difficult for him. [Lockhart] said he didn't raise this during the interview/hiring process because the position was presented as working 100% remotely which works well for him." (Id.). Cox explained Lockhart agreed to report onsite for a three-week training period and work remotely thereafter, but Lockhart failed to appear on his first day. (Id.).

---

**2.** This was the first time Lockhart told an employee of TEKsystems or SMS that he has an anxiety disorder. Lockhart circled "no" when asked whether he had a disability in his employment contract with TEKsystems. (SMS Mot. Ex. 1 at 18).

**3.** Cox testified during his deposition that Lockhart said he "could" attend work onsite for the three-week training period, which slightly conflicts with Lockhart's testimony that he "would be willing to try." (See Cox Depo. at 17).

**4.** The "Chief of Unix" appears to be a VA employee who supervised the VA Project.

**5.** Lockhart admitted in his deposition that his contract with TEKsystems does not include a provision stating he was to work remotely. (Lockhart Depo. at 55). He stated that "agreement" would have been a more suitable word than "contract" to use in his email to Cox. (Id. at 84).

Cox proposed, "I think we need to remove [Lockhart] from my contract and get TEK[systems] looking for a replacement immediately. We then need to discuss if we want to see if [Lockhart] could work remotely on another contract or how we want to handle this." (*Id.*).

That day, Cox also informed Winnop via phone call that Lockhart has an anxiety disorder which resulted in his absence from work. (Cox Depo. at 43). That afternoon at 1:41 p.m., Winnop emailed Cox and informed him the Chief of Unix would be willing to allow Lockhart work remotely and forego the three-week training period, as long as Lockhart "can communicate well via phone, IM, email and is capable to do the job." (Pltf. Resp. Ex. 11 at 1). She also wrote, "working 100% telecommute changes some of the access/set-up requirements which will cause a bit of a delay for our readiness." (*Id.*). Winnop stated she would keep Cox posted on the progress of setting up for Lockhart's arrangement and projected that Lockhart could start sometime in the next few weeks. (*Id.*).

At 2:11 p.m. the same day, Sackewitz sent an email to Cox that stated Sackewitz had spoken with Roger Sigley ("Sigley"), Sackewitz's supervisor at SMS. (Pltf. Resp. Ex. 10). In the email, Sackewitz stated, "I just spoke with [Sigley] and relayed this info to him. We agree with your recommendation and Roger has just told TEK[systems] to find us a new resource." (*Id.*). At 4:21 p.m. that day, Sigley sent an email to Cox and Sackewitz, among others, that stated he instructed Ryan Elliot, apparently a TEKsystems employee, "to release [Lockhart] immediately, he refused to go on-site which was the requirement." (Pltf. Resp. Ex. 1 at 1). Sigley said he understood that Lockhart "was offered three weeks [onsite] as a compromise and was to be onsite today [sic] he wasn't there and essentially said due to anxiety issues

he would not be doing that and his contract with TEK[systems] stated 100% off-site. Therefore we cannot use him [sic] so that discussion is over." (*Id.*).

At 2:28 p.m., Cox responded to Winnop's email and informed her that he "spoke with [Sackewitz] who had run this past [Sigley] and we're going to pull [Lockhart] from this contract and hire a new resource." (*Id.* at Ex. 11). Cox stated that he appreciated "the extraordinary flexibility [Winnop] and the [Chief of Unix] were wiling to extend on this, but we feel like it would be too great a stretch for all parties." (*Id.*). On November 17, 2011, the date Lockhart failed to report onsite for the Linux Position, Defendants removed Lockhart from the Linux Position. (Cox. Depo. at 25 & Ex. 10).

TEKsystems employee Andrea Intlekofer ("Intlekofer") contacted Lockhart on November 18, 2011 to discuss Lockhart's anxiety disorder. (Lockhart Depo. at 146). She informed Lockhart that in order to find an accommodation for Lockhart's anxiety disorder, TEKsystems would need documentation from a healthcare provider. (*Id.*). Intlekofer filed an accommodation request on Lockhart's behalf, and mailed Lockhart the forms for his doctor to complete. (*Id.* Ex. 11). During a followup conversation on November 23, 2011, Lockhart told Intlekofer he would get the documentation to her via fax. (*Id.* at 146).

Intlekofer spoke via telephone with Lockhart on November 30, 2011 and notified him she had not received his documentation. Lockhart explained his failure to get her the documentation at the agreed time was the result of complications with his anxiety and depression following his termination. According to Lockhart, due to his condition, he could not leave his home or care for himself. Lockhart also told Intlekofer he had not yet scheduled a doctor's appointment because of his condi-

tion. Intlekofer told Lockhart that TEK-systems' policy requires employees who request accommodations to submit the required medical documentation within two weeks of the accommodation request. (*Id.* at 148–151, 159).

On November 30, 2011, Intlekofer emailed Lockhart regarding a request from Lockhart's physician for Family Medical Leave Act ("FMLA") forms. Intlekofer explained that the FMLA did not apply to his accommodation request. (*Id.* at 151–52 & Ex. 16). Nevertheless, according to Lockhart, when Lockhart contacted his doctor's office to get the requested documentation, he was repeatedly told the doctor needed FMLA paperwork in order to release Lockhart's medical information to TEKsystems. (*Id.* at 149 & Ex. 13).

Lockhart emailed Intlekofer on December 2, 2011 to inform her that his doctor's office insisted they need FMLA forms from Intlekofer in order to provide her with Lockhart's medical information. (*Id.* Ex. 13). On December 5, 2011, Intlekofer responded that she requested the FMLA forms and instructed they be delivered directly to Lockhart. (*Id.*). Lockhart emailed Intlekofer on December 29, 2011, stating that he received some paperwork, but the FMLA paperwork still had not arrived. (*Id.* Ex. 14). Intlekofer provided Lockhart with a FedEx tracking number that indicated the FMLA paperwork was delivered to Lockhart's door on December 9, 2011. (*Id.*). Lockhart believes the package was delivered to his apartment complex office because he was not home, and somehow became lost. (*Id.* at 163).

After receiving no further contact from Lockhart after his December 29, 2011 email, Intlekofer emailed Lockhart on February 2, 2012 and informed him that his accommodation request had been closed and he had been terminated. (*Id.* at 165; SMS Mot. Ex. 3 ("Intlekofer Depo.") at 61–62 & Ex. 22). Lockhart responded the following day and apologized for the dearth of contact. (Lockhart Depo. Ex. 15). He explained that the situation triggered depression along with anxiety and asked that his ADA accommodation request be reopened or to open a new accommodation request. (*Id.* at 165 & Ex. 15).

At some point before the accommodation request was closed, Lockhart's doctor may have dictated a letter to be given to Intlekofer regarding Lockhart's medical condition.[6] (*Id.* at 167). However, before Lockhart could pick up the letter to deliver to Intlekofer, his accommodation request was closed. (*Id.* at 168). Lockhart made an appointment with his doctor to get the FMLA paperwork filled out in February 2012, after his termination. (*Id.* at 159). He testified he was able to make an appointment at that time because he came out of his depressive state enough to travel to the doctor's office. (*Id.*).

Defendants have now moved for summary judgment. Defendants contend Lockhart failed to establish that the termination of his employment was the result of discrimination or in any way improper. The parties have filed responsive pleadings and the matter is now ripe for determination.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material

---

6. It is unclear whether Lockhart's doctor actually dictated a letter or simply told Lockhart he had. However, there is no dictated letter in Lockhart's medical file. (Lockhart Depo. at 169).

fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir.2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Davis v. Fort Bend County*, 765 F.3d 480, 484 (5th Cir.2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wise v. E.I. DuPont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir.1995). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.1992).

The Court will view the summary judgment evidence in the light most favorable to the non-movant. *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir.2006). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Piazza's Seafood World, L.L.C. v. Odom*, 448 F.3d 744, 752 (5th Cir.2006). Once the non-movant has been given the opportunity to present evidence to create a genuine issue of fact, the court will grant summary judgment if no reasonable juror could find for the non-

movant. *Boos v. AT & T, Inc.*, 643 F.3d 127, 130 (5th Cir.2011).

## III. ANALYSIS

Plaintiff alleges Defendants violated the Americans with Disabilities Act ("ADA") and the Texas Commission on Human Rights Act ("TCHRA"). Specifically, Plaintiff alleges Defendants are joint employers who failed to accommodate his social anxiety disorder and terminated his employment as the result of discrimination based on his disability. Defendants now move for summary judgment, arguing Plaintiff failed to engage in a good faith interactive process to devise a reasonable employment accommodation for his disability.

### A. Applicable Law

■ The ADA specifically prohibits discrimination in the terms, conditions, or privileges of employment. 42 U.S.C.A. §§ 2000e–2(a) & 12112. To state a prima facie claim for employment discrimination under the ADA and TCHRA, Lockhart must show (1) he has a disability; (2) he is qualified for his job; and (3) Defendants discriminated against him because he is disabled. *Neely v. PSEG Tex., Ltd.*, 735 F.3d 242, 245 (5th Cir.2013); *see Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex.2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *et al.*) ("In [TCHRA] discrimination cases that have not been fully tried on the merits, [Texas courts] apply the burden-shifting analysis established by the United States Supreme Court" applicable to federal discrimination cases).

Lockhart must show he is qualified for his position because either he can perform essential job functions, despite his disability, or a reasonable accommodation for his disability would have enabled him to per-

form essential job functions. 42 U.S.C. § 12111(8). Employers are required to make reasonable accommodations for disabled employees. 42 U.S.C. § 12112(b)(5)(A); *see* 29 C.F.R. § 1630.2(*o*)(3) (in order to craft a reasonable accommodation, "it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation"); *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 734 (5th Cir.1999) ("The ADA requires employers to make reasonable accommodations for disabled employees.").

█ In order to meet the "discrimination" third prong of a prima facie claim, Lockhart must first show he suffered an adverse employment action. *See McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279–80 (5th Cir.2000) (adverse employment action is element of employment discrimination claim under the ADA); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999) (same); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir.1999) (same for race and age discrimination). Lockhart must then show his disability was a "motivating factor" for the adverse employment action. *Adeleke v. Dallas Area Rapid Transit*, 487 Fed.Appx. 901, 903 (5th Cir. 2012); *see Carmona v. Southwest Airlines Co.*, 604 F.3d 848, 862 (affirming jury's verdict that inferred employee's disability was a motivating factor in his discharge); *Pinkerton v. Spellings*, 529 F.3d 513, 517–19 (5th Cir.2008) (expressly rejecting the "sole causation" standard, which asked whether an employee's disability was the sole cause of the employer's adverse employment action, in favor of the "motivating factor" standard in ADA claims).

█ Alternatively, to meet the third prong, Lockhart must demonstrate his employer failed to reasonably accommodate his disability. Failure to accommodate is a form of discrimination under the ADA, and likewise, requires a showing that the plaintiff is disabled. 42 U.S.C. § 12112(b)(5)(A); *McDowell v. Home Depot USA, Inc.*, 126 Fed.Appx. 168, 170 (5th Cir.2005). For an employer to be liable under the ADA for failure to accommodate limitations caused by an employee's disability, the employee must request accommodation from the employer and participate in a "good faith interactive process" with the employer to arrive at a suitable accommodation. *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 624 (5th Cir.2009); *Tullos v. City of Nassau Bay*, 137 Fed.Appx. 638, 646 (5th Cir. 2005); *Loulseged*, 178 F.3d at 735–36.

Once Lockhart makes his prima facie showing, the burden then shifts to Defendants to articulate a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817. If Defendants articulate such a reason, the burden then shifts back to Lockhart to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination. *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir.2003); *McInnis*, 207 F.3d at 279.

Defendants stipulate Lockhart has an anxiety disorder that is a disability as defined by the ADA. Defendants do not concede Lockhart is qualified for his job, or that they discriminated against him because of his disability. The Court will address the contested issues in turn.

**B. Joint/Single Employers**

As a preliminary matter, the undersigned first addresses whether TEKsystems and SMS are joint/single employers, and the actions of each can thus be imputed to the other. Lockhart contends, and Defendants do not dispute, that TEKsys-

tems and SMS are a joint/single employer. Moreover, TEKsystems wrote a letter to the United States Equal Employment Opportunity Commission that states there is an agreement between TEKsystems and SMS that establishes them as co-employers with rights and obligations to their employees. (*See* Pltf. Resp. Ex. 15). Accordingly, TEKsystems and SMS will be treated as one entity for the purpose of Defendants' motions for summary judgment. *See Karagounis v. Univ. of Tex. Health Sci. Ctr. at San Antonio,* 168 F.3d 485 (5th Cir.1999) (citing *Boire v. Greyhound Corp.,* 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964)) (joint employer relationship depends on employer's exercise over other employer's labor relations); *see also Schweitzer v. Advanced Telemarketing Corp.,* 104 F.3d 761, 764 (5th Cir.1997) (quoting *Trevino v. Celanese Corp.,* 701 F.2d 397, 404 (5th Cir.1983)) (in civil rights cases, "superficially distinct entities may be exposed to liability upon a finding they represent a single, integrated enterprise: a single employer"); *Hodgson v. Griffin & Brand of McAllen, Inc.,* 471 F.2d 235, 237 (5th Cir.1973) (whether employers are joint is question of fact).

## C. Qualified with Reasonable Accommodation

Defendants assert it was essential for Lockhart to appear onsite for the Linux Position on the VA Project. Defendants further assert that Lockhart's request to work remotely was unreasonable, thus there was no reasonable accommodation that would allow him to perform his job. A plaintiff is qualified if he can perform the essential functions of the position, or if a reasonable accommodation would allow him to perform the essential functions of

the position. 42 U.S.C. § 12111(8); *see Leaumont v. City of Alexandria,* 582 Fed. Appx. 407, 407 (5th Cir.2014) (plaintiff is qualified if he can perform essential functions of job).

### 1. Essential Job Functions

■ Determining essential job functions is a fact-specific inquiry that must be made on a case-by-case basis. 29 C.F.R. Pt. 1630, App. § 1630.2(n). Defendants assert Lockhart's position was intended to be a fully onsite position, but, at a minimum, Lockhart needed to be trained onsite for three weeks.[7] In support, Defendants cite Cox's testimony that he asked Lockhart to work onsite for the initial three-week period to "get everything configured, get the training, learn [his] duties and then we could see about doing the telecommute after that three-week time period." (Cox Depo. at 17).

Lockhart, in turn, points out SMS's client, the VA, was willing to allow Lockhart to work offsite without a three-week onsite period. Specifically, he cites Winnop's email stating she had spoken to the Chief of Unix, who was willing to allow Lockhart to work offsite, so long as he could communicate via phone, instant message, and email, although it would cause a "bit of delay." (Pltf. Resp. Ex. 11 at 1).

As Defendants correctly point out, the VA is a third party and thus cannot override SMS or TEKsystems' policies or procedures. However, SMS sought the VA's approval the first time Lockhart requested to work remotely, suggesting the VA had some input regarding his job functions. (*See* Pltf. Mot. Ex. 10 (email from Cox stating he asked Winnop if Lockhart could work remotely after an onsite three-week training period)). The evidence thus pres-

---

**7.** Lockhart's qualifications and ability to perform essential job functions are not otherwise    disputed.

ents a factual dispute as to whether it was essential for Lockhart to report on site for the first three weeks of his employment. *See McGregor v. La. St. Univ. Bd. of Sup'rs,* 3 F.3d 850 (5th Cir.1993) (whether handicapped person is otherwise qualified for employment is question of fact). Accordingly, summary judgment is not proper on this issue. *See Bisker v. GGS Info. Servs., Inc.,* 2010 WL 2265979, at *4 (M.D.Pa. June 2, 2010) (factual dispute about whether normal attendance at work was essential function of employee's job precluded summary judgment).

### 2. Reasonableness of Accommodation

Accommodations for disabled employees must be reasonable for the employer to implement. *Riel v. Elec. Data Sys. Corp.,* 99 F.3d 678, 681 (5th Cir.1996). "Accommodation is not reasonable if it either imposes 'undue financial and administrative burdens' on a grantee, or requires a 'fundamental alteration in the nature of [the] program.'" *School Bd. of Nassau Cnty. v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) (citation omitted). Under the ADA, reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B); *see* 29 C.F.R. § 1630.2(*o*)(1)–(2) (defining "reasonable accommodation" and listing various examples).

Defendants contend Lockhart's request to forego the three-week onsite training period and work completely offsite is unreasonable. As discussed above, Lockhart requested an accommodation to work remotely, including for the three-week training period. Because Lockhart's essential job functions are unclear, it is difficult to discern whether asking to work offsite and foregoing the three-week onsite training process is a reasonable request. Nevertheless, Lockhart offered evidence that the work could be done completely offsite because SMS's client, the VA, stated that it did not require his physical presence onsite. Although Defendants dispute a third-party's ability to dictate Lockhart's job duties, Defendants have provided no evidence showing it would be an undue burden to allow Lockhart to work remotely. *Riel,* 99 F.3d at 682 (employer bears burden of proof to show undue burden because it is affirmative defense under the language of the statute). Moreover, Lisa Malorzo ("Malorzo"), SMS's Director of Human Resources, testified she thought the accommodation to work offsite was possible and was a reasonable accommodation for Lockhart's disability. (Pltf. Resp. Ex. 19 ("Malorzo Depo.") at 46). Accordingly, a genuine issue of material fact exists regarding whether Lockhart's accommodation request was reasonable. *Antoine v. First Student, Inc.,* 713 F.3d 824 (5th Cir.2013) (whether an accommodation is reasonable is a question of fact); *Vangas v. Montefiore Med. Ctr.,* 6 F.Supp.3d 400, 418–19 (S.D.N.Y.2014) (whether denial of employee's request to work remotely was reasonable or imposed an undue burden on employer could not be decided as a matter of law because employer's procedures and employee's qualifications were disputed).

### D. Discrimination Based on Disability

Defendants maintain Lockhart's termination was not based on his disability, but was a result of his failure to appear to work onsite on November 17, 2011, and failure to participate in the good faith in-

teractive process thereafter. Discrimination occurs when either an employee suffers an adverse employment action wherein the employee's disability is a motivating factor, or an employer fails to engage in the good faith interactive process to find a reasonable accommodation for the employee's disability. *See McInnis*, 207 F.3d at 279–80 (5th Cir.2000) (adverse employment action is element of employment discrimination claim under the ADA); *Adeleke v. Dallas Area Rapid Transit*, 487 Fed.Appx. 901, 903 (5th Cir. 2012) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir.2007)) (plaintiff must establish disability was a "motivating factor" in an adverse employment action).

## 1. Adverse Employment Action

■ Adverse employment actions are *"ultimate employment decisions* such as hiring, granting leave, discharging, promoting, and compensating." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir.2004) (quoting *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir.2002)) (emphasis in original). The parties do not dispute that termination is an adverse employment action. *See Grubic v. City of Waco*, 262 Fed.Appx. 665 (5th Cir.2008) (no fact issue as to whether suspension and termination of employee are adverse employment actions); *Pegram,* 361 F.3d at 282 (quoting *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir.2001)) ("Even under this court's stringent "ultimate employment action" standard, it is beyond dispute that a termination constitutes an adverse action"); *Mota*, 261 F.3d at 519 (ultimate employment decisions include terminations or discharges). Moreover, there is no dispute that Lockhart was not employed by either Defendant after February 2, 2012. However, the parties dispute whether Lockhart's removal from the Linux Position on the VA Project on

November 17, 2011 was a termination constituting an adverse employment action.

Defendants contend Lockhart's removal from the VA Project was not an adverse employment action and that Lockhart remained employed by TEKsystems. Defendants support this position by citing to Lockhart's deposition testimony, which establishes Lockhart was hired by TEKsystems and assigned to the VA Project approximately two months before his start date on the VA Project. Defendants further cite to Lockhart's employment contract with TEKsystems and point out that Lockhart continued to interact with TEKsystems and was considered a TEKsystems employee until February 2, 2012.

Lockhart counters that removing him from the VA Project was an adverse employment action because he was effectively terminated. Specifically, he maintains he was fired when he was removed from the VA Project because he was never reassigned to another contract. He further contends that he never communicated with any SMS employee after being removed from the VA Project. Lockhart also points out that Ryan Elliot ("Elliot"), apparently an employee of TEKsystems, emailed Cox on November 17, 2011 and stated, "[W]e have terminated Aaron Lockhart effective immediately and are working on retrieving his Laptop / Badge." (Pltf. Resp. Ex. 3). Lockhart maintains that these facts confirm that he was effectively terminated on November 17, 2011.

The evidence is clearly mixed as to whether removing Lockhart from the Linux Position on the VA Project was an adverse employment action. On one hand, it appears Lockhart remained employed with TEKsystems after his removal from the VA Project. On the other hand, it appears removal from the VA Project could be an adverse employment action

because Lockhart was to be paid an hourly wage, not a salary, and he was not assigned to another project.[8] (Lockhart Depo. Ex. 4); *see McArdle v. Dell Products, L.P.*, 293 Fed.Appx. 331, 337 (5th Cir.2008) (whether reasonable employee would view purportedly adverse employment action as materially adverse is question of fact for the jury to decide). On these facts, a reasonable jury could find the VA Project removal was an adverse employment action. *See Pegram*, 361 F.3d at 284 (holding a genuine issue of material fact exists as to whether an adverse employment action occurred where a reasonable trier of fact could find two compensation packages were unequal); *Smith v. Clark County School Dist.*, 2007 WL 1133659, at *4–5 (D.Nev. Apr. 16, 2007) (question of fact existed as to whether reassignment of duties constituted adverse employment action).

The Court notes the date of Lockhart's actual termination is particularly important because it may provide insight into whether Defendants' attempts to engage in the interactive process with Lockhart were in good faith or were merely remedial. Nevertheless, because there is a genuine factual dispute regarding whether removal from the VA Project was an adverse employment action, the Court cannot grant summary judgment on this issue.

### 2. Motivating Factor

Lockhart contends his disability was a motivating factor in his termination. *See Pinkerton*, 529 F.3d at 517–19 (adopting ADA discrimination test which asks whether an employee's disability was a motivating factor the employer's adverse employment action). Because there was one potential adverse employment action and one undisputed adverse employment action, the Court will address each in turn.

### a. Removal from the VA Project on November 17, 2011

■ Without conceding an adverse employment action occurred, Defendants contend that they removed Lockhart from the VA Project because he failed to appear at the job site on the November 17, 2011 start date. Defendants further contend that Lockhart had agreed to attend work onsite for a three-week training period. Unexcused absence is a legitimate, nondiscriminatory reason for terminating an employee. *See Sanchez v. U.S. Postal Service ex rel. Donahoe*, 430 Fed.Appx. 368, 371 (5th Cir.2011) (firing employee for forty days of unscheduled sick leave was legitimate); *Powers v. Woodlands Religious Community Inc.*, 323 Fed.Appx. 300, 302 (5th Cir.2009) (excessive absenteeism is a nondiscriminatory reason for discipline and termination). Accordingly, the burden shifts back to Lockhart to show the reasons proffered by Defendants are pretextual. *Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 413, 420 (5th Cir.2006).

■ Lockhart argues he was actually removed because of his anxiety disorders. In support of this argument, Lockhart points to SMS's failure to consider any accommodation before removing him from the VA Project. *See Riel*, 99 F.3d at 681–82 (employer who treats disabled employee same as non-disabled employee may violate ADA). He contends that Sigley, Sackewitz, and Cox were all aware of Lockhart's inability to attend work onsite due to his disability, yet all of them made the decision to remove him from the Linux Position. (*See* Pltf. Resp. Ex. 18 ("Sackewitz Depo.") at 46–47; Pltf. Mot. Ex. 1, 2, 11).

According to their own deposition testimony, neither Sigley, Sackewitz, nor Cox

8. The Court notes that Lockhart did not raise this specific point.

attempted to address Lockhart's request to work completely offsite for the three-week training period. (Sackewitz Depo. at 41; Cox Depo. at 34–35). *See Liner v. Hosp. Serv. Dist. No. 1 of Jefferson Parish*, 230 Fed.Appx. 361, 364 (5th Cir.2007) (finding sufficient evidence to uphold jury verdict finding discrimination when employer discriminated against employee when employer terminated employee instead of transferring him to vacant position); *see also Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir.2005) ("An employer may not stymie the [good faith] interactive process of identifying a reasonable accommodation for an employee's disability by preemptively terminating the employee before an accommodation can be considered or recommended"). Moreover, as discussed above, Malorzo testified that neither Cox nor Sigley had told her that the VA was willing to accommodate Lockhart's disability by allowing him to work offsite. She also stated SMS's practice was for managers to contact Human Resources prior to terminating an employee who requested an accommodation. (Malorzo Depo. at 36). Accordingly, Lockhart has presented sufficient evidence to establish a genuine issue of material fact regarding whether his disability was a motivating factor in his removal from the Linux Position.

### b. TEKsystem Termination on February 2, 2012

Defendants next contend that Lockhart was fired in February 2012 because he caused a breakdown in the good faith interactive process to provide him with a reasonable accommodation for his disability. *See Loulseged*, 178 F.3d 731 (defendants who in good faith engage in the interactive process to accommodate employee's disability will not be held liable for discrimination if disabled employee causes breakdown in the good faith interactive process). Defendants also maintain that Lockhart did not comply with a company policy that requires employees submitting accommodation requests for medical disabilities to provide Human Resources with documentation of the disability within two weeks of the request.

Defendants have offered evidence that Intlekofer attempted to confer with Lockhart over several months, until he was notified that his accommodation request was closed on February 3, 2012. However, Lockhart has offered evidence suggesting this proffered reason is pretextual. First, he characterizes the entire interactive process with TEKsystems as not in good faith because he was actually terminated on November 17, 2011. *See Chevron Phillips*, 570 F.3d at 623–24 (jury could reasonably find that employer's proffered non-discriminatory reason for firing, that employee lied on medical form, was pretextual when employer's immediate reaction to notification of employee's disability and accommodation request was to call medical department about medical form and fire employee); *see also Cutrera*, 429 F.3d at 113 (employer cannot fire employee and then engage in the good faith interactive process).

Second, Lockhart points to Sackewitz's deposition testimony that SMS had previously allowed another SMS employee who had an anxiety disorder to work remotely on a project for the VA without requiring the employee to provide medical documentation. (Sackewitz Depo. at 60–61); *see Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 860 (5th Cir.2010) (affirming jury verdict that found employer's proffered reason for firing, violating the attendance policy, was pretextual and discriminatory when other employees were not fired for violating attendance policy). Lockhart also cites an email sent on December 16,

2011, from Fernando "Ricky" Santico, an employee relations manager with TEKsystems, to Intlekofer, which stated, "We just need to do our due diligence to show incase [sic] [Lockhart] does file a claim." (Pltf. Resp. Ex. 14). Based on this evidence, the court concludes a jury could therefore reasonably find that Defendants' proffered reasons for terminating Lockhart, his failure to provide TEKsystems with medical forms and causing the breakdown in the good faith interactive process, are pretextual.

### 3. Good Faith Interactive Process

Defendants argue Plaintiff's ADA claim is barred because he did not engage in the good faith interactive process. Lockhart counters that he was fired after he was removed from the VA Project on November 17, 2011 without any consideration of his accommodation request to forego the onsite training period, thus there was no good faith interactive process in which to engage.

### a. Applicable Law

■■■■■ The good faith interactive process in which an employer must engage is "a meaningful dialogue with the employee to find the best means of accommodating that disability." *Chevron Phillips*, 570 F.3d at 621 (quoting *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 108 (1st Cir.2005)). The process requires "communication and good-faith exploration." *Id.* (quoting *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 871 (6th Cir.2007)). The initial burden to identify a disability and the resulting limitations rests on the disabled employee. *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir.1996). When the disability is mental, healthcare providers are in the best position to advise employers with how to appropriately accommodate an employee. *Id.* If the employer does not engage in the good faith

interactive process, which includes an employer terminating an employee instead of considering the accommodation request, the employer violates the ADA. *Chevron Phillips*, 570 F.3d at 621 (citing *Cutrera*, 429 F.3d at 113). However, an employee's ADA claim will be barred if the employee fails to participate in the good faith interactive process, or causes a breakdown in communication during the good faith interactive process. *Loulseged*, 178 F.3d at 731, 736.

### b. Discussion

■■■■■ Defendants contend Lockhart caused a breakdown in the good faith interactive process because he failed to provide Intlekofer with medical documentation to support his accommodation request. Defendants also note that Intlekofer kept Lockhart's accommodation request open for an inordinate amount of time, despite Lockhart's failure to provide the required information.

It is undisputed that TEKsystems' company policy requires an employee to submit medical paperwork within two weeks of an accommodation request. (*See* SMS Mot. Ex. 1 at 27). It is also undisputed that Intlekofer attempted to contact Lockhart to obtain his medical information on many occasions and kept Lockhart's accommodation request open until February 2, 2012. Therefore, if Lockhart's ultimate firing on February 3, 2012 was the only adverse employment action against him, it would appear Lockhart caused the breakdown in the good faith interactive process and summary judgment should be granted in favor of Defendants. *See Loulseged*, 178 F.3d 731 (district court properly granted employer's motion for judgment as a matter of law when claim was based solely on failure to accommodate and employee caused breakdown in good faith interactive process).

Lockhart maintains that Defendants terminated him from the VA Project on November 17, 2011 without considering his request to not attend the worksite for the initial three-week training period. Defendants contend that SMS removed Lockhart from the VA Project so that he could engage in the good faith interactive process with TEKsystems. *See Liner,* 230 Fed.Appx. at 364 (reasonable jury could find employer did not engage in good faith interactive process and employee did not cause breakdown in communications when employer terminated employee and notified him of other positions within the company after termination); *Cutrera,* 429 F.3d at 113 (employer did not engage in good faith interactive process with employee when employer preemptively fired employee before considering accommodation request).

Reviewed in a light most favorable to Lockhart, his supervisors made little effort to accommodate his disability. This is supported by the evidence that within hours of making clear his anxiety disorder prevented him from working onsite on the VA Project, Lockhart was removed from the VA Project. There was also some evidence that shows the removal decision was made despite the fact that the VA was willing to forego requiring Lockhart to work onsite for the three-week training period. Moreover, Sigley and Cox failed to tell Malorzo that the VA was willing to attempt to accommodate Lockhart. (Malorzo Depo. at 40). Finally, removing Lockhart without reassigning him suggests lack of intent to meaningfully engage in the good faith interactive process. It is undisputed that there was no other available remote position to which Lockhart could be reassigned at the time he was removed from the Linux Position. *But cf. McAlpin v. Nat'l Semiconductor Corp.,* 921 F.Supp. 1518, 1525 (N.D.Tex.1996) (employer is not required to create new position as reasonable accommodation if none exists).

In sum, Defendants decided to remove Lockhart from the VA Project, rather than continue the good faith interactive process with SMS. A reasonable jury could therefore find Defendants failed to engage in a good faith interactive process before subjecting Lockhart to an adverse employment action. *Lowe v. Indep. School Dist. No. 1 of Logan County,* 363 Fed.Appx. 548 (10th Cir.2010) (whether employer failed to act in good faith is question of fact precluding summary judgment for the employer). Therefore, if removal from the Linux Position on the VA Project is an adverse employment decision, the interactive process Defendants attempted to engage in thereafter does not appear to be in good faith. *See supra* section III.B.1 (adverse employment decision discussion).

Accordingly, there remains a genuine issue of material fact regarding whether Defendants' decision to remove Lockhart from the VA Project was a failure to engage in a good faith interactive process to determine a reasonable accommodation for Lockhart's disability.

## IV. CONCLUSION

Viewing the summary judgment evidence in the light most favorable to Lockhart, the Court finds a reasonable juror could find for the non-movant. *Hixson Bros., Inc.,* 453 F.3d at 285 (court must view summary judgment evidence in light most favorable to non-movant); *Boos,* 643 F.3d at 130 (court will grant summary judgment for movant if no reasonable juror could find for non-movant). In short, there remain genuine issues of material fact for trial: (1) whether attendance onsite was an essential job function of Lockhart's employment; (2) whether working remotely was a reasonable accommodation;

(3) whether Defendants' decision to remove Lockhart from the Linux Position was a failure to engage in a good faith interactive process; (4) whether removing Lockhart from the Linux Position on the VA Project was an adverse employment decision; and (5) whether Defendants' proffered non-discriminatory reasons for removing Lockhart from Linux Position on the VA Project and terminating him are pretextual.

## V. ORDER

The Court hereby **DENIES** Defendant Systems Made Simple, Inc.'s Motion for Summary Judgment (Clerk's Dkt. No. 40).

The Court further **DENIES** Defendant TEK systems, Inc.'s Motion for Summary Judgment (Clerk's Dkt. No. 41).